PETER D. KEISLER
Assistant Attorney General
MATTHEW H. MEAD
United States Attorney
CAROL A. STATKUS
Assistant United States Attorney
SANDRA M. SCHRAIBMAN (DC Bar 188599)
Assistant Branch Director
ALEXANDER K. HAAS (CA Bar 220932)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Br.
20 Massachusetts Ave., NW, Ste. 7328
Washington, DC 20530
Tel. 202-307-3937  Fax. 202-616-8470
alexander.haas@usdoj.gov
Counsel for Defendants

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| STATE OF WYOMING, *ex rel.*, Patrick J. Crank, Wyoming Attorney General; ) ) ) ) | |
| Plaintiff, ) | 06-CV-0111-J |
| v. ) ) | **NOTICE AND CERTIFICATION OF ADMINISTRATIVE RECORD** |
| UNITED STATES; Bureau of Alcohol, Tobacco, Firearms, & Explosives; Carl J. Truscott, in his official capacity as Direct of Bureau of Alcohol, Tobacco, Firearms, & Explosives and David H. Chipman, in his official capacity as the Chief, Firearms Division, Bureau of Alcohol, Tobacco, Firearms, & Explosives; ) ) ) ) ) ) ) ) ) | |
| Defendants. ) ) | |

Cherie A. Knoblock, pursuant to 28 U.S.C. § 1746, deposes and says as follows:

1.      I am currently the Acting Deputy Chief in the Firearms Program Division, of the

Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"). I have been employed by the Firearms Program Division since August of 2004. The facts attested to herein are based on my personal knowledge and information obtained in my official capacity.

2.      From August 2005 through 2006, I aided the Chief of the Firearms Programs Division, in reviewing the Wyoming state statute, which is subject to this lawsuit, and in determining the effect of the Wyoming statute under the Gun Control Act, 18 U.S.C. §§ 921, et seq. I reviewed both the materials submitted by the Wyoming Attorney General's office and ATF's contacts with the Wyoming Attorney General on this issue.

3.      The documents annexed hereto as exhibits A-G constitute, to the best of my knowledge, a true and complete copy of all nonprivileged documents and materials considered by ATF in reaching its decision in this matter. Annexed as exhibit H, is a privilege log listing two internal ATF legal memoranda that are being withheld from the record on grounds of Attorney-Client privilege and Work Product privilege. These exhibits constitute the "whole record" in this matter. Bar MK Ranches v. Yuetter, 994 F.2d 735, 739-40 (10th Cir. 1993); Wyoming v. USDA, 239 F.Supp.2d 1219, 1228-31 (D. Wy. 2002) (reviewing claimed privilege in an administrative record), vacated on other grounds 414 F.3d 1207 (10th Cir. 2005).

I certify under penalty of perjury that the foregoing is true and correct.

Executed on:   July ⁊ , 2006 in the City of Washington, District of Columbia.


_Cherie A. Knoblock_
CHERIE A. KNOBLOCK

2

# EXHIBIT A



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Phoenix Field Division*

August 6, 2004

Phoenix, Arizona 85012

www.atf.gov

785000  EME
PX-68348

Honorable Patrick J. Crank
Attorney General
State of Wyoming
200 West 24th Street
123 State Capitol
Cheyenne, Wyoming 82002

Re:    Wyoming Statute 7-13-1501 (effective July 1, 2004)

As you may know, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is responsible for enforcing the provisions of the Federal Gun Control Act of 1968, as amended, 18 U.S.C. §§ 921 *et. seq.* ATF has reviewed newly enacted Wyoming Statute 7-13-1501 to determine its effect on Federal firearms law. Based on our review, we do not believe it will have any effect whatsoever on Federal law, for the reasons set forth below.

Title 18, United States Code, section 922(g)(9) provides that it is unlawful for any person who has been convicted of a misdemeanor crime of domestic violence to receive or possess firearms or ammunition. Section 921(a)(33) excludes from the prohibition any conviction that has been expunged or set-aside, or is for an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights for such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, or receive firearms.

Wyoming Statute 7-13-1501 allows any person who has been convicted of a misdemeanor to petition the convicting court for "an expungement of the records of conviction for the purposes of restoring any firearm rights lost." If the Court finds that a petitioner is eligible for such relief, the Court must issue an order granting "expungement of the applicable records" and "place the court files under seal, available for inspection only by order of the court." W.S.A. § 7-13-1501(g). The statute further states:

> An expungement granted pursuant to this section shall only be used for the purposes of restoring firearms rights that have been lost to persons convicted of misdemeanors. Nothing in this section shall be construed to affect the enhancement of penalties for second or subsequent convictions of misdemeanors

- 2 -

Honorable Patrick J. Crank
Attorney General
State of Wyoming

under the laws of this state. Nothing in this section shall be construed to allow a person who has previously received an expungement of records of conviction under this section to seek a second or subsequent expungement of records of conviction under this section.

W.S.A. § 7-13-1501(m).

The Wyoming statute adopts the same definition of the term "expungement" as Wyoming Statute 7-13-1401(j)(i). That section defines the term "expungement" to mean:

> only the classification of the record maintained in the files of the state central repository at the division of criminal investigation as defined by W.S. 7-19-107(a), in a manner reasonably tailored to ensure that the record will not be available for dissemination purposes other than to a criminal justice agency of any state or a federal criminal justice agency, to be used solely for criminal justice purposes. Expungement shall not include investigatory files of any local, state or federal criminal justice agency, where those files are being used solely for criminal justice purposes

Federal law, Title 18, United States Code, Section 921(a)(33), expressly removes from Federal firearms disabilities any conviction that has been "expunged." In the absence of express language to the contrary, Federal, not State law, interprets the term "expunge." The 10th Circuit, in *United States v. Johnson*, 941 F.2d 1102, 1111 (10th Cir. 1991), explained the meaning of the term "expunge:"

> The word "expunge" generally means the physical destruction of information. <u>Dubnoff v. Goldstein, 385 F.2d 717, 724 (2d Cir. 1967)</u> With respect to criminal records, expunction refers to the process of sealing or destroying the record of a criminal conviction after expiration of a certain time. *Black's Law Dictionary* at 522 (5th ed. 1979).

Though Wyoming Statute 7-13-1501 does provide for limited sealing of court records, it authorizes dissemination of criminal investigative records to State and Federal law enforcement agencies for criminal justice purposes. Since the conviction records are not destroyed and remain available to law enforcement agencies for criminal enforcement purposes, Wyoming Statute 7-13-1501 does not result in "expungement" that removes the fact of conviction for criminal justice purposes, to include the imposition of Federal firearms disabilities under 18 U.S.C. § 922(g)(9). *Cf. United States v. Hines*, 133 F.3d

- 3 -

Honorable Patrick J. Crank
Attorney General
State of Wyoming

1360, 1364-66 (10th Cir. 1998) (convictions "expunged" under Arkansas law may be used for Federal sentencing purposes because Federal law must control and the Arkansas' "expungement" statute merely restored civil rights without removing the fact of conviction).[1]

Based on the above, any person convicted of a misdemeanor crime of domestic violence who later receives an "expungement" in accordance with newly enacted W.S.A. § 7-15-1501 will continue to be prohibited by 18 U.S.C. § 922(g)(9) from shipping, transporting, receiving, or possessing firearms and ammunition.

We would appreciate your communication of ATF's position to any interested parties in the State of Wyoming. Should you or anyone else have any questions, they may contact ATF Division Counsel Eric M. Epstein at 602-776-5433.

Lester D. Martz
Special Agent in Charge
Phoenix Field Division

---

[1] We note that Wyoming Statute 7-13-1501 does not purport to remove or restore core *civil* rights, *i.e.,* the rights to vote, hold public office, and sit on a jury. Since core civil rights are not removed nor restored under this statute, we need not examine whether Wyoming law expressly provides that the person may or may not receive firearms.

# EXHIBIT B



# Office of the Attorney General

**Governor**
Dave Freudenthal

**Attorney General**
Patrick J. Crank

Administration
123 State Capitol
Cheyenne, Wyoming 82002
307-777-7841 Telephone
307-777-6869 Fax

**Chief Deputy Attorney General**
Elizabeth C. Gagen

August 16, 2004

Eric Epstein, BATF Division Counsel
U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phoenix Field Division
Phoenix, Arizona   85012

RE:    August 6, 2004 Letter from Lester D. Martz

Dear Mr. Epstein:

I have read the above-referenced letter. While I don't agree with your legal opinion which rests solely on your definition of the word "expunge," you make an interesting argument. I will be curious to see what the Tenth Circuit rules when and if BATF and the Wyoming U.S. Attorney's Office decide to pursue a 922(g) prosecution on a conviction expunged under Wyoming law.

While I appreciate you sharing your opinion with me, BATF should disseminate its views to those whom it believes needs to know. If you firmly believe in your legal analysis, you should notify the citizens of Wyoming that you will not give any effect to this law. I would suggest you do some kind of press release. It would be very unfortunate if some unsuspecting person "expunged" his conviction in good faith reliance on a Wyoming statute only to be convicted of a felony charge because BATF does not recognize the law.

Regards,

Patrick J. Crank
Attorney General

PJC:cc

c:    Matt Mead, U.S. Attorney for the District of Wyoming
      Lester D. Martz, SAC, Phoenix Field Division

# EXHIBIT C

FROM :                                    FAX NO. :                        Jan. 19 2006 01:39PM  P2



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

Washington, DC 20226

www.atf.gov

JUL  -5 2005

**RECEIVED**

JUL 0 7 2005

BUREAU ATF
PHOENIX FIELD DIVISION

Honorable Patrick J. Crank, Attorney General
State of Wyoming
200 West 24th Street
123 State Capitol
Cheyenne, Wyoming  82002

Dear Mr. Crank:

In a letter to James M. Wilson dated May 20, 2005, the Bureau of Alcohol, Tobacco,
Firearms and Explosives (ATF) informed your office that Wyoming's concealed weapons
permit continues to qualify as an alternative to running a National Instant Criminal
Background Check System (NICS) check when a person purchases a firearm from a
Federally licensed firearms dealer. We had come to this conclusion because we found
the permit met the statutory and regulatory criteria for this exception. Unfortunately, we
recently became aware that Wyoming's permit no longer meets these criteria. We
apologize for any confusion our change of position may cause.

As the May 20th letter explained, the Brady law and its implementing regulations provide
exceptions to the NICS requirement, including an exception for holders of certain State
permits to possess, carry, or acquire firearms. *See* 18 U.S.C. § 922(t)(3) and 27 C.F.R.
§ 478.102(d)(1). Permits issued within the past 5 years by the State in which the transfer
is to take place qualify as alternatives to a NICS check if the following criteria are met:
the law of the State must provide that such a permit is to be issued only after an
authorized government official has verified that the information available to such official,
including NICS check results, does not indicate that possession of a firearm by the
applicant would be in violation of Federal, State, or local law.

We have learned that Wyoming is issuing permits to persons with misdemeanor crime of
domestic violence ("MCDV") convictions, who have received an expungement under
newly-enacted Wyoming Statute 7-13-1501. In an August 6, 2004 letter, ATF informed
you that the expungement provided by this statute does not remove the Federal MCDV
prohibition. As we explained in the August 2004 letter, although the Federal Gun
Control Act ("GCA") generally removes Federal firearms disabilities for convictions that
have been "expunged," Federal, not State law, interprets the term "expunged" as it is
used in the GCA. *See* 18 U.S.C. § 921(a)(20). The Wyoming statute essentially creates
an expungement provision expressly designed to remove the Federal MCDV prohibition

- 2 -

Honorable Patrick J. Crank

without expunging the conviction for other purposes. For example, the records expunged by the Wyoming statute remain available to law enforcement agencies for criminal enforcement purposes. Therefore, ATF does not consider such MCDV convictions to be "expunged" under the standard ATF uses for applying Federal law and thus does not consider such convictions expunged for purposes of the GCA. Accordingly, Wyoming is issuing permits to persons prohibited from possessing firearms under Federal law.

For this reason, the standards set forth in the Brady law and the implementing regulations would require us to find that Wyoming's concealed weapons permit no longer qualifies as a NICS check alternative. We have been informed that our position also may affect the reciprocity of Wyoming's concealed weapons permits with other States. Because we appreciate the impact this issue has on your State, we would like to give your office the opportunity to address this issue. If you inform ATF in writing by **September 30, 2005** that Wyoming's concealed weapons permits are not being issued to persons who have been convicted of an MCDV, regardless of whether such persons received an expungement under Wyoming Statute 7-13-1501, we will continue to consider Wyoming permits as a NICS alternative.

We understand that your legislature would like the opportunity to address this issue when it reconvenes next February, to craft an expungement provision that would be considered an expungement for purposes of the GCA. We would be glad to provide your office or legislature with assistance in assessing the affect of any proposed legislation on Federal law.

As stated above, if you are able to correct the problem by September 30, 2005, Wyoming's concealed weapons permit will continue to qualify as a NICS alternative. However, if you are unable to correct the problem, we will alert Federally licensed firearms dealers in your State that they can no longer accept the permits as a NICS check alternative. We again apologize for any confusion this follow-up letter may cause.

We appreciate your assistance in this matter. We are sure you understand that it is critical to strictly enforce the permit exception to ensure prohibited persons do not acquire firearms. If you need any further assistance or guidance, please do not hesitate to contact me at 202-927-7770.

Sincerely yours,

John A. Spurgeon
Chief, Firearms Programs Division

- 3 -

Honorable Patrick J. Crank

Cc:    United States Attorney
       District of Wyoming

       Mr. James M. Wilson
       Office of the Attorney General

# EXHIBIT D

Aug-30-05  10:45    From-WYOMING ATTORNEY GENERAL              3077776869           T-861   P.02/06   F-272



# *Office of the Attorney General*

| | | |
|---|---|---|
| Governor<br>Dave Freudenthal | Administration<br>123 State Capitol<br>Cheyenne, Wyoming 82002<br>307-777-7841 Telephone<br>307-777-6869 Fax | Chief Deputy Attorney General<br>Elizabeth C. Gagen |
| Attorney General<br>Patrick J. Crank | | |

August 30, 2005

*VIA FACSIMILE AND FIRST CLASS MAIL*

John A. Spurgeon, Chief
Firearms Programs Division
U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives
Washington, D.C. 20226

     Re:    July 5, 2005 letter

Dear Mr. Spurgeon:

     I have read the above referenced letter. I have also read Mr. Lester D. Martz's August 6, 2004, letter to which you refer in your July 5, 2005, letter. I would like to take this opportunity to point out your flawed legal analysis before you take the drastic measure of inappropriately misinforming federally-licensed firearms dealers in Wyoming that they should not consider concealed weapons permits, issued by Wyoming, as a satisfactory alternative to an NCIS check.

     The crux of your argument seems to be that since an "expungement" under WYO. STAT. ANN. § 7-13-1501 does not provide for a complete physical obliteration of the criminal records, and that the criminal records may, in fact, still be used for future criminal justice purposes, then the convictions would not be considered "expunged" under federal law. You apparently conclude that a firearm disabling conviction "expunged" under WYO. STAT. ANN. § 7-13-1501 does not comport with the federal meaning of "expunged." Thus, the federal prohibition against possession of a firearm would still exist and a concealed weapon permit issued pursuant to such an expungement would also be in violation of federal law.

John A. Spurgeon
August 30, 2005
Page 2 of 5

There is no definition of the term "expunge" anywhere in 18 U.S.C. §§ 921 or 922, or Title 27 of the CODE OF FEDERAL REGULATIONS. However, 18 U.S.C. § 927 states:

> No provision of this chapter shall be construed as indicating an intent on the part of Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

Further, 18 U.S.C. § 921(a)(20) expressly provides that "[w]hat constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceeding were held."[1]

Accordingly, your and Mr. Martz's statement that "Federal, not State law, interprets the term 'expunge[d,]'" is just plain wrong. *See Beechem v. United States*, 511 U.S. 368, 374 (1994) (recognizing 18 U.S.C. § 921(a)(20) as an express exception to the rule that Federal law rather than State law controls the definition of what constitutes a conviction); *see also Caron v. United States*, 524 U.S. 308 (1998) (courts must review the *state law* which restored a person's rights to possess certain types of firearms).

By virtue of the fact that Wyoming enacted WYO. STAT. ANN. § 7-13-1501, Wyoming law considers an expungement under WYO. STAT. ANN. § 7-13-1501 to mean the disabling conviction no longer exists. ATF is required to apply Wyoming law under the choice-of-law provision in 18 U.S.C. § 921(a)(20) and the non-preemptive language provided in 18 U.S.C. § 927.

Even assuming ATF is not required to apply Wyoming law for purposes of considering firearms disabilities, the language in 18 U.S.C. § 921(a)(20) and 27 C.F.R. § 478.142 is broad enough to include an "expungement" under WYO. STAT. ANN. § 7-13-1501 as the type of proceeding which removes a firearm disability. You and Mr. Martz have incorrectly analyzed the term "expunge" in the same manner as that term is used in federal sentencing of habitual criminals.

---

[1] An identical choice-of-law provision is found in 27 C.F.R. §478.11 (meaning of terms for commerce in firearms and ammunition).

John A. Spurgeon
August 30, 2005
Page 3 of 5

In his August 6, 2004 letter, Mr. Martz cites to two cases for the authority that "expunge" means something different under federal law.[2] In both *United States v. Johnson*, 941 F.2d 1102 (10th Cir. 1991) and *United States v. Hines*, 133 F.3d 1360 (10th Cir. 1998), the courts addressed whether States' laws professing to "expunge" a criminal record prevented a federal court from using that record to enhance a sentence for a subsequent federal criminal violation. However, "expungement" for the purposes of determining criminal history for federal sentencing is wildly different than determining whether a conviction has been "expunged" for purposes of eliminating a firearm disability.

Federal courts presented with the issue of interpreting various States' use of the term "expunged" for purposes of federal sentencing have drawn a bright line between State convictions "expunged" because of innocence or errors of law, and those convictions "expunged" as diversionary dispositions as part of rehabilitative sentences. *See United States v. Townsend*, 408 F.3d 1020 (8th Cir. 2005); *United States v. Dell*, 359 F.3d 1347 (10th Cir. 2004); *United States v. Ashburn*, 20 F.3d 1336 (5th Cir. 1994).

The bright line was drawn under the auspices of U.S.S.G. § 4A1.2(f) & (j) and the commentary notes for U.S.S.G. § 4A1.2 (specifically–cmt. nn.6, 9, & 10). Convictions "set aside" for reasons unrelated to innocence or errors of law are explicitly required to be counted for purposes of sentencing. U.S.S.G. § 4A1.2, cmt. n.10. Conversely, "expunged" convictions are not to be counted. U.S.S.G. § 4A1.2(j). Comment 6 of the U.S.S.G. § 4A1.2 describes the type of convictions which should not be counted. "Sentences resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or (B) have been ruled unconstitutionally invalid in a prior case are not to be counted." U.S.S.G. § 4A1.2, cmt. n.6.[3]

Accordingly, for purposes of sentencing, the U.S.S.G and the courts have treated convictions "set aside" differently from those convictions "expunged." There is no such

---

[2] Mr. Martz actually comments that "[s]ince the conviction records *are not destroyed* . . . Wyoming Statute 7-13-1501 does not result in 'expungement' . . . ." (emphasis added). Not even the citation he uses for authority avers such a narrow definition. The quote in *United States v. Johnson*, 941 F.2d 1102, 1111 (10th Cir. 1991) is: "With respect to criminal records, expunction refers to the process of *sealing,* or destroying the record of a criminal conviction after expiration of a certain time. Black's Law Dictionary at 522 (5th ed.1979)." (emphasis added). When criminal records are "expunged" under WYO. STAT. ANN. § 7-13-1501, they are sealed. Accordingly, WYO. STAT. ANN. § 7-13-1501 could be recognized as "expungement" even under the authority cited by Mr. Martz.

[3] Unlike other areas of the law, there is also a logical reason to narrowly define the term "expunged" for purposes of sentencing. As U.S.S.G. § 4A1.2, cmt. n. 9 explains, "counting adult diversionary dispositions . . . reflects a policy that defendants who receive the benefit of a rehabilitative sentence and continue to commit crimes should not be treated with further leniency." That reasoning does not apply to the issue at hand.

John A. Spurgeon
August 30, 2005
Page 4 of 5

differentiation made in 18 U.S.C. § 921, or in Title 27 of the CODE OF FEDERAL REGULATIONS. In fact, 18 U.S.C. § 921(a)(20) specifically states that a conviction which is "set aside" will not be considered a conviction. Further, 27 C.F.R. § 478.142 provides that "any expunction, reversal, setting aside of a conviction or other proceeding rendering a conviction nugatory, or a restoration of civil rights shall remove any disability which otherwise would be imposed . . . ."[4]

The narrow definition which you and Mr. Martz attach to the term "expunged" is simply not supportable when analyzed under the appropriate controlling authority. A conviction "expunged" under WYO. STAT. ANN. § 7-13-1501 should not be considered a conviction under 18 U.S.C. § 921 & 922, nor Title 27 of the CODE OF FEDERAL REGULATIONS.

Further, what authorizes you or the ATF to make the determination of whether a State statute meets the criteria espoused under 18 U.S.C. § 922(t)(3)(A)? Under 18 U.S.C. § 922(t)(3)(A), federal firearms dealers need not perform a NCIS check if the potential firearm purchaser presents a permit to the federally licensed firearms dealer which evinces: (1) that the potential firearm purchaser is allowed to possess or acquire a firearm; and (2) that the permit was not issued more than five years earlier by the State wherein the transfer is to take place. See 18 U.S.C. § 922(t)(3)(A).

For the permit to qualify as a valid exception to the NCIS requirement, the State's law must also provide: "that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by [the potential purchaser] would be in violation of law." Id. It is the authorized government official[5] that verifies the eligibility of a potential purchaser, not the ATF. Where, in that language, or other statutes or regulations, do you glean the authority to inject your understanding of the law which would essentially nullify the provisions of 18 U.S.C. § 922(t)(3)(A)?

Also, please be advised that I have been informed that Wyoming has not issued any concealed weapon permits to any person who has received an expungement pursuant to WYO. STAT. § 7-13-1501. Thus, your threat to require concealed weapon permit holders to undergo a NCIS check is not based on a real concern regarding the reliability of the

---

[4]  A conviction "expunged or set aside" is also not considered a conviction according to the meaning of terms in 27 C.F.R. § 478.11.

[5]  In Wyoming, the authorized government official is the Wyoming Attorney General. See WYO. STAT ANN. § 6-8-104.

John A. Spurgeon
August 30, 2005
Page 5 of 5

Wyoming permit system. Your threat is based solely on speculation and a political disagreement with a law duly enacted by the Wyoming Legislature.

I strongly urge you to reconsider your position and your previously expressed intended actions. The September 30, 2005, date was set arbitrarily and without regard to the timing of the sessions of the Wyoming Legislature. I would urge you to re-examine the law in this area, withdraw the September 30, 2005, deadline, and take the time to reach some decision based on a correct analysis of your statutory authority, relevant law, and common sense.

Regards,

Patrick J. Crank
Attorney General

PJC:dkj

xc:    The Honorable Dave Freudenthal, Governor
       Matt Mead, U.S. Attorney
       The Honorable Cale Case, Wyoming State Senator
       The Honorable Becket Hinckley, Wyoming State Representative

# EXHIBIT E



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

Washington, DC 20226

www.atf.gov

Honorable Patrick J. Crank, Attorney General
State of Wyoming
200 West 24th Street
123 State Capitol
Cheyenne, Wyoming  82002

Dear Mr. Crank:

Thank you for your August 30, 2005 letter in response to our July 5, 2005 letter regarding Wyoming's concealed weapons permit. In the July 5th letter, we informed you that the Wyoming permit no longer qualified as an alternative to a National Instant Criminal Background Check System (NICS) check, because it is issued to persons who receive expungements under W.S.A. § 7-13-1501.

More specifically, in the July 5, 2005 letter, we referenced an August 6, 2004 letter in which we informed you that the expungement provided by section 7-13-1501 did not remove the Federal misdemeanor crime of domestic violence (MCDV) prohibition under 18 U.S.C. §§ 921(a)(33) and 922(g)(9). The August 6th letter explained that although the Federal Gun Control Act (GCA) generally removes Federal firearms disabilities for convictions that have been "expunged," Federal, not State law, governs the meaning of the term "expunged" as used in section 921(a)(33). The letter stated that under Federal law, the term "expunge" generally refers to the process of sealing or destroying the record of a criminal conviction after expiration of a certain time. The August 6th letter then pointed out that because an MCDV conviction record that has been expunged under W.S.A. § 7-13-1501 is not destroyed and remains available to law enforcement agencies for criminal enforcement purposes, such an expungement does not remove the fact of conviction for purposes of the GCA.

We have carefully reviewed your August 30, 2005 letter. In this letter you point to the language of the GCA in the context of felony convictions which states that what constitutes a conviction "shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20). You cite to Beechem v. United States, 511 U.S. 368 (1994) and Caron v. United States, 524 U.S. 308 (1998) to support your argument that State, not Federal, law governs whether someone is considered convicted. The letter then states that because Wyoming considers an expungement under section 7-13-1501 "to mean the disabling conviction no longer exists," under the choice-of-law provision of section 921(a)(20), ATF must view the expungement as removing the firearms disability.

-2-

Honorable Patrick J. Crank, Attorney General

ATF agrees that the analysis used in section 921(a)(20) applies in the MCDV context contained in section 921(a)(33). ATF also agrees that the statute and the case law interpreting it provide that we look to State law to determine if someone has been convicted of a crime. Moreover, since the question of whether someone has been convicted turns in part on whether they have been pardoned, had civil rights restored, or their conviction has been expunged or set aside, we must look to State law in determining if any of these events have occurred.

However, we do not believe a State standard governs whether something is a pardon, set aside, expungement, or restoration of civil rights. Rather, we use a Federal standard and then look to the State procedures to see if the procedures meet this standard. Many Federal courts of appeal have addressed this issue in the civil rights restoration context. The courts interpreting the meaning of "civil rights" looked to the intent of Congress to determine what a "civil right" is, and whether the applicable State restoration procedures were substantial enough to remove firearms disabilities under Federal law. See, e.g., United States v. Indelicato, 97 F.3d 627, 630 (1st Cir. 1996) ("Although Congress did not specify which civil rights it had in mind ... Congress had in mind the core cluster of 'citizen' rights that are typically lost by felons and restored by pardons, namely, the right to vote, to serve on a jury and to hold public office."); United States v. Cassidy, 899 F.2d 543, 549 (6th Cir. 1990) ("We are confident...based on the general intent of Congress...that Congress envisioned a restoration of more than a *de minimis* quantity of civil rights."). Thus, the courts, as a matter of Federal law, determined that the rights to vote, hold public office, and sit on a jury were the "core" rights required for a restoration of civil rights in the GCA. The courts then looked to State law to see if the State restored these core rights.

The courts do not appear to have addressed the issue of using a Federal versus State standard in the context of expungements. However, the rules of statutory construction lead us to conclude the same approach must be used to analyze the expungement provision as is used to analyze the restoration of civil rights provision. Thus, we use a Federal standard and then look to State law to see if the State's procedures meet the Federal standard.

The question then becomes what is the Federal standard for an expungement. Black's Law Dictionary, 5th Edition, defines "expungement of record" as the "[p]rocess by which record of criminal conviction is destroyed or sealed after expiration of time." The 10th Circuit cited this definition in United States v. Johnson, 941 F.2d 1102 (10th Cir. 1991)(determining whether a criminal record was expunged for purposes of the Federal Sentencing Guidelines). United States v. Crowell, 3774 F.3d 790 (9th Cir. 2004) contains a useful discussion on expungements:

> A defendant who moves to expunge her conviction does not seek to vacate or set aside her conviction. "Expunge" (to erase) and "vacate" (to nullify or to cancel) denote very different actions by the court. ... [A] defendant who seeks expungement request "the judicial editing of history." Rogers v. Slaughter,

-3-

Honorable Patrick J. Crank, Attorney General

> 469 F.2d 1084, 1085 (5th Cir. 1972). Although "expungement may mean different things in different states, in general when a defendant moves to expunge records, she asks that the court destroy or seal the records of the fact of the defendant's conviction and not the conviction itself.

Given these definitions, we agree that records do not need to be destroyed to meet the Federal expungement standard. However, we still do not find the expungement provided by section 7-13-1501 meets the Federal standard. As stated above, in your August 30th letter, you state that Wyoming law considers an expungement under section 7-13-1501 "to mean the disabling conviction no longer exists." However, the text of section 7-13-1501, and a comparison to the other Wyoming expungement statutes, belies this assertion.

For example, section 7-13-1501 contains limiting language including:

(1) "A person who has pleaded guilty or nolo contendere to or been convicted of a misdemeanor or misdemeanors arising out of the same occurrence or related course of events may petition the convicting court for an expungement of the records of conviction for the purposes of restoring any firearm rights lost."; and

*(2)* "An expungement granted pursuant to this section shall only be used for the purposes of restoring firearm rights that have been lost to persons convicted of misdemeanors. Nothing in this section shall be construed to affect the enhancement of penalties for second or subsequent convictions of misdemeanors under the laws of this state."

This language makes it clear that the purpose of the expungement is solely to restore Federal firearms rights lost pursuant to 18 U.S.C. § 922(g)(9). This is reflected in a February 27, 2004 Associate Press article stating: "[Representative] Case is co-sponsoring legislation that would exploit a loophole: restoring gun-ownership rights by expunging conviction records. The House Judiciary Committee voted Friday to send the bill to the full House for consideration on Monday. Senate File 64 would apply only to a single misdemeanor."

The limited purpose and effect of the section 7-13-1501 "expungement" is evident when it is compared to the other Wyoming expungement provisions. For example, W.S.A. 7-13-1401, a general expungement provision, contain the statement "[a] person who has received an order of expungement under this section may respond to any inquiry as though the arrest, or charge or charges did not occur, unless otherwise provided by law." Section 7-13-1501 contains no such language.

Section 7-13-1501 also differs substantially from the three other sections of Wyoming law we found which provide for expungements, 14-6-440 (expungement of records in juvenile court); 31-7-120 (records to be kept by division, exceptions); and 14-6-241 (expungement of records in juvenile and municipal courts). Each of these provisions contains language stating, in essence,

-4

Honorable Patrick J. Crank, Attorney General

that upon entry of the expungement order, the proceedings are "deemed never to have occurred and the petitioner may reply accordingly upon any inquiry in the matter." Accordingly, a Wyoming Attorney General opinion interpreting section 14-6-241 stated "[i]f a record is expunged, it is deemed never to have occurred. . . . Therefore, it cannot be used as evidence in future cases." 1987 Op. Atty Gen. Wyo. 1 (Feb. 1987).

Clearly section 7-13-1501 is not like these other expungement provisions. It does not contain language stating the conviction that was expunged is "deemed never to have occurred and the petitioner may reply accordingly upon any inquiry in the matter". Thus, someone with such an expungement cannot reply to an inquiry that the proceedings have never occurred, except, according to the statute, in the context of whether they are prohibited from possessing a firearm. The conviction is indeed considered to have occurred for other reasons, such as sentence enhancement. Accordingly, the statement in your August 30th letter that Wyoming law considers an expungement under section 7-13-1501 to mean the disabling conviction no longer exists conflicts with the plain language of the provision, especially in comparison to the other Wyoming expungement provisions.

Finally, you assert 18 U.S.C. § 927 also supports your analysis. Section 927 states:

> No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

This provision is not relevant to the current analysis. As your letter makes clear, section 921 contains its own choice-of-law provision and so that is what we must rely on for the current analysis. Furthermore, there is no preemption issue in this situation. The only question is whether persons with these expungements are prohibited from possessing firearms under Federal law, regardless of if they have a State firearms prohibition.

Accordingly, as stated in our earlier letter, Wyoming permits cannot qualify as NICS alternative permits unless they are not issued to anyone with an expungement issued under section 7-13-1501 or unless you amend section 7-13-1501, perhaps by making it similar to the other Wyoming expungement statutes, so that it meets the Federal standard for an expungement. If you would like the Wyoming permit to continue to qualify as a NICS alternative, by April 14, 2006, either (1) tell us that these permits will not be issued to persons with section 7-13-1501 expungements or (2) present us with draft legislation that will address the problem. We would be happy to work with you if you decide to draft legislation.

-5-

Honorable Patrick J. Crank, Attorney General


In summary, Wyoming believes its concealed weapons permit should continue to serve as an alternative to a NICS checks. However, as this letter details, current Wyoming law does not meet Federal requirements for expungment of criminal records and, therefore, the Wyoming permit does not qualify as a NICS alternative. ATF would be pleased to work with you on possible remedies that meet our common goal of ensuring that firearms are kept out of the hands of prohibited persons, including those with domestic violence convictions.

Thank you for your patience and your efforts to ensure prohibited persons do not obtain firearms.

Sincerely yours,


Nicholas V. Colucci
Deputy Chief, Firearms Programs Division


c: Mr. Matt Mead, U.S. Attorney

# EXHIBIT F



U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

Washington, DC 20226

MAR - 9 2006    www.atf.gov    CC-91,176 FE:AR

Honorable Patrick J. Crank, Attorney General
State of Wyoming
200 West 24th Street
123 State Capitol
Cheyenne, Wyoming 82002

Dear Mr. Crank:

On January 13, 2006, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) sent you a letter via facsimile stating that the Wyoming permit does not qualify as a National Instant Criminal Background Check System (NICS) check alternative. ATF then told you it would be pleased to work with you on possible remedies that meet our common goal of ensuring that firearms are kept out of the hands of prohibited persons, including those with domestic violence convictions.

Specifically we explained that Wyoming permits cannot qualify as NICS alternative permits unless they are not issued to anyone with an expungement issued under Wyoming statute section 7-13-1501, or unless you amend section 7-13-1501 so that it meets the Federal standard for an expungement. For the permit to continue to qualify, we asked that by April 14, 2006, you either (1) tell us that these permits will not be issued to persons with section 7-13-1501 expungements, or (2) present us with draft legislation that will address the problem. We offered our assistance in helping you draft such legislation.

As you know, on July 5, 2005, we sent you a similar letter, giving Wyoming until September 30, 2005 to inform us that these permits would not be issued to persons with section 7-13-1501 expungements. In that letter, we stated that we thought your legislature would consider legislation to address this issue during its February 2006 session. We also offered our assistance in that process.

You have requested an extension to the April 14, 2006 deadline. You seem to suggest that because the Wyoming legislature cannot pass legislation addressing this issue until its 2007 session, there would be no harm in granting an extension. When we wrote the July 5 and January 13 letters, ATF believed that Wyoming would be able to address this issue legislatively during its February 2006 legislative session. We now recognize that you cannot address this legislatively until 2007. We agree with you that this fact changes the utility of an April 14, 2006 deadline for legislative language. However, an extension is not the solution because it would

-2-

Honorable Patrick J. Crank, Attorney General

allow prohibited persons to receive and possess firearms without a NICS check, which is
inconsistent with the statutory language of the Brady Law and threatens public safety.

Accordingly, a legislative fix is no longer a viable short-term solution. Therefore, for
Wyoming's permit to continue to qualify as a NICS alternative, by April 14, 2006, you must
advise us that these permits will not be issued to persons with section 7-13-1501 expungements.

As we stated in our January 13th letter, we are happy to work with you to meet our common goal
of ensuring prohibited persons do not obtain firearms. This includes a long term solution of
helping you with legislative language in 2007. Please let us know if you have any questions.

Sincerely yours,

David H. Chipman
Chief, Firearms Programs Division

c: Mr. Matt Mead, U.S. Attorney

# EXHIBIT G



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

MAR 2 8 2006

---

Washington, DC 20226

www.atf.gov

CC-91,632  FE:AR

Honorable Patrick J. Crank, Attorney General
State of Wyoming
200 West 24th Street
123 State Capitol
Cheyenne, Wyoming  82002

Dear Mr. Crank:

As you know, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has been in communication with your office since May 20, 2005, regarding whether Wyoming concealed weapons permits qualify for the statutory and regulatory permit exemption to the general National Instant Criminal Background Check System (NICS) check requirement.  Moreover, as early as August 6, 2004, ATF had written to you to inform you of our interpretation of Wyoming Statute 7-13-1501's effect on the Federal firearm laws.  Please see our attached copies of this correspondence.

As we have repeatedly stated, most recently in our March 9, 2006 letter, we have serious public safety concerns about prohibited persons obtaining firearms under the current situation, whereby prohibited persons with section 7-13-1501 expungements can obtain NICS alternative permits.  However, we recognize that it may take Wyoming additional time, beyond April 14, 2006, to resolve this issue.  Therefore, pursuant to your request, we are extending our deadline until May 15, 2006.

We hope this extension will provide you with an opportunity to determine your course of action. Please recognize, however, that in light of our public safety concerns, this will be the final extension granted.  We look forward to hearing from you.

Sincerely yours,

David H. Chipman
Chief, Firearms Programs Division

Cc: Mr. Matt Mead, U.S. Attorney

Enclosures

# EXHIBIT H

# WYOMING V. UNITED STATES: PRIVILEGE LOG TO ADMINISTRATIVE RECORD

Codes used to indicate privilege asserted (column 2):

AW-Attorney Work Product – Material prepared in the course of, and related to, this litigation, and containing mental impressions, recommendations and opinions.

AC-Attorney/Client Communication-Communications between ATF attorneys and agency officials.

| PAGE # | PRIVILEGE(S) ASSERTED | DOCUMENT DESCRIPTION |
|---|---|---|
| 1-3 | AW, AC | August 3, 2004 Memorandum from Division Counsel, Phoenix Field Division to Associate Chief Counsel (FEA) interpreting the effect of Wyoming Statute Section 7-13-1501 on the Federal firearms laws. |
| 4-9 | AW, AC | September 20, 2005 Memorandum from Division Counsel, Phoenix Field Division to Chief Counsel examining the effect of Wyoming Statute Section 7-13-1501 on Federal firearms disabilities. |
| END | | |
| | | |