FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

AUG 1 6 2006
/. ०১०~
Stephan Harris, Clerk
Cheyenne

Patrick J. Crank
Attorney General

C. Levi Martin
Senior Assistant Attorney General
123 Capitol Building
Cheyenne, WY 82002
(307) 777- 7841
(307) 777-6869 facsimile

Attorneys for the Appellant State of Wyoming

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| State of Wyoming, *ex rel.*, Patrick J. Crank, Wyoming Attorney General; <br><br> Appellant, <br><br> v. <br><br> UNITED STATES; Bureau of Alcohol, Tobacco, Firearms, & Explosives; Carl J. Truscott, in his official capacity as Director of Bureau of Alcohol, Tobacco, Firearms, & Explosives and David H. Chipman, in his official capacity as the Chief, Firearms Division, Bureau of Alcohol, Tobacco, Firearms, & Explosives; <br><br> Appellees. | Civil Action No. 06-CV-0111-J |

## BRIEF OF APPELLANT

## TABLE OF CONTENTS

Page No.

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.    The BATF's decision that WYO. STAT. ANN. § 7-13-1501 does not
        remove a federal firearm disability was arbitrary and capricious. . . . . . . . . 7
        A.    State law defines "expungement." . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        B.    Even assuming federal law controls, the provisions of
               WYO. STAT. ANN. § 7-13-1501 allow an applicant the
               opportunity to "expunge" or "set-aside" their conviction,
               and it satisfies any federal law requirement regarding the
               removal of a federal firearm disability. . . . . . . . . . . . . . . . . . . . . 12

    II.    The BATF's decision that Wyoming's CCW permits do not qualify as
         an exception to the NICS check under 18 U.S.C. § 922(t)(3)(A) was
         arbitrary, capricious and in excess of BATF's statutory jurisdiction and
         authority. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    III.    The BATF's demands on state authorities violate the Tenth
          Amendment to the United States Constitution. . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

ATTACHMENTS

# TABLE OF AUTHORITIES

Page No.

Cases

*Cascade Natural Gas Corp. v. F.E.R.C.*,
955 F.2d 1412 (10th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Citizens' Comm. to Save Our Canyons v. United States Forest Serv.*,
297 F.3d 1012 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Colorado Envt'l Coalition v. Dombeck*,
185 F.3d 1162 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Custer County Action Ass'n v. Garvey*,
256 F.3d 1024 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Dickerson v. New Banner Institute, Inc.*,
460 U.S. 103 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Johnston v. Volunteers of America*,
213 F.3d 559 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kegler v. United States*; 06-CV-00009-J (D.WYO.);
REPLY IN SUPP. OF DEFS. MOT. TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

*Kelley v. United States*,
69 F.3d 1503 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Lamb v. Thompson*,
265 F.3d 1038 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 17, 19, 20

*Marsh v. Oregon Natural Res. Council*,
490 U.S. 360 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*MCI Telecomms. Corp. v. Am. Tel. & Tel. Co.,*
512 U.S. 218 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*New York v. United States,*
505 U.S. 144 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Oklahoma v. United States,*
161 F.3d 1266 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Printz v. United States,*
521 U.S. 898 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Sierra Club-Black Hills Group v. United States Forest Serv.,*
259 F.3d 1281 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Bost,*
87 F.3d 1333 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16

*United States v. Brailey,*
408 F.3d 609 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Caron,*
77 F.3d 1 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16

*United States v. Cassidy,*
899 F.2d 543 (6th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16

*United States v. Hubenka,*
438 F.3d 1026 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

*United States v. Indelicato,*
97 F.3d 627 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Johnson,*
941 F.2d 1102 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

·

*United States v. Ramos,*
   961 F.2d 1003 (1ˢᵗ Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Smith,*
   171 F.3d 617 (8ᵗʰ Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Wacker,*
   72 F.3d 1453 (10ᵗʰ Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Wegrzyn,*
   305 F.3d 593 (6ᵗʰ Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## Statues

100 Stat. 449 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
ALASKA STAT. § 12.55.085 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
ARIZ. REV. STAT. § 13-921 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
D.C. CODE ANN. § 24-906 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
LA CODE CRIM. PROC. ANN., art. 894 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
MICH. COMP. LAWS ANN. § 780.621-623 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
NEB. REV. STAT. § 29-2264 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
WYO. STAT. ANN. § 6-8-102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
WYO. STAT. ANN. § 6-8-104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 19, 20
WYO. STAT. ANN. § 7-13-1501 . . . . . . . . . . . . . . . . . . . . . . 1, 3-5, 7, 8, 11-17, 20, 22, 23

## Other Authorities

27 C.F.R. § 478.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13
27 C.F.R. § 478.102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
27 C.F.R. § 478.142 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
5 U.S.C. §§ 701-706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 17
18 U.S.C. §§ 921-931 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 921 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-11, 13, 17

18 U.S.C. § 922 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-4, 7, 9, 11, 17-23

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1346 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §§ 2201-2202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Black's Law Dictionary at 522 (5th ed.1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

S.Rep. No. 583, 98th Cong., 2d Sess. 7 n.16 (1984) . . . . . . . . . . . . . . . . . . . . . . . 10

Tenth Amendment of the United States Constitution . . . . . . . . . . . . . . . . . . . . 1, 21-23

U.S.S.G. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 15, 16

## STATEMENT OF JURISDICTION

This action arises under the Tenth Amendment of the United States Constitution and the Administrative Procedures Act (APA), 5 U.S.C. §§ 701-706. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346(a)(2) (United States as a defendant), 28 U.S.C. §§ 2201-2202 (declaratory judgments), and 5 U.S.C. §§ 702-706 (APA right of review). The United States' sovereign immunity is explicitly waived under 5 U.S.C. § 702 when persons suffering a legal wrong by agency action seek "relief other than for money damages." This is an appeal of final agency action.

## ISSUES PRESENTED FOR REVIEW

I. Was the Bureau of Alcohol, Tobacco, and Firearms' decision that WYO. STAT. ANN. § 7-13-1501 does not remove a federal firearm disability arbitrary and capricious?

II. Was the Bureau of Alcohol, Tobacco, and Firearms' decision that Wyoming's carry concealed weapons permits do not qualify as an exception to the National Instant Criminal Background Check System under 18 U.S.C. § 922(t)(3)(A) arbitrary, capricious or in excess of Bureau of Alcohol, Tobacco, and Firearms' statutory jurisdiction and authority?

III. Did the Bureau of Alcohol, Tobacco, and Firearms' demands on state authorities violate the Tenth Amendment to the United States Constitution?

1

## STATEMENT OF THE CASE

This is an appeal of administrative action. Wyoming is appealing Bureau of Alcohol, Tobacco, and Firearms' (BATF's) decisions to: (1) ignore Congressional intent; (2) misconstrue federal and state law; and (3) commandeer Wyoming's legislature and its Attorney General. The issue arose in August 2004, when the BATF informed Wyoming, by letter, it would not recognize a Wyoming law which expunges convictions of misdemeanor domestic violence offenders for the purpose of restoring firearms rights. (Ex. A).[1]

Over the course of the next nineteen months, Wyoming and the BATF exchanged correspondence wherein Wyoming attempted to dissuade the BATF from its illegal position. The BATF's position remained, and in March of 2006 the BATF threatened the Wyoming Attorney General: either capitulate to the BATF's illegal interpretations by April 14, 2006 or the BATF will, by that date, mandate that Federal Firearms License (FFL) dealers refuse to accept Wyoming's carry concealed weapons (CCW) permits as a National Instant Criminal Background Check System (NICS) check exception under 18 U.S.C. § 922(t)(3)(A). (Ex. F). That deadline was later extended to May 15, 2006. (Ex. G). On May 8, 2006, Wyoming filed its COMPLAINT against the BATF.

---

[1] Wyoming attached several exhibits to its COMPLAINT. All of those exhibits have been included by the BATF as a part of the Administrative Record (AR), but were identified in a different order and by letter instead of number. For purposes of this brief, any reference to an exhibit is referring to the AR as designated by the BATF.

## STATEMENT OF THE FACTS

In 2004, the Wyoming legislature enacted WYO. STAT. ANN. § 7-13-1501. (*See* Attach. 1). This statute provides persons previously convicted of a misdemeanor crime with a one-time right to petition the convicting court for an expungement of that misdemeanor record for the specific purpose of restoring "any firearm rights lost[.]" WYO. STAT. ANN. § 7-13-1501(a).

Persons eligible to possess firearms in Wyoming may apply to the Wyoming Attorney General for a CCW permit. WYO. STAT. ANN. § 6-8-104(b). This includes persons who have had their records "expunged" pursuant to WYO. STAT. ANN. § 7-13-1501(a). FFL dealers are not required to perform a NICS check on firearms purchasers who possess a CCW permit. 18 U.S.C. § 922(t)(3)(A).

In August 2004, the BATF sent a letter to Wyoming's Attorney General opining that federal law, not state law, governs the legal interpretation of the term "expunge" and that WYO. STAT. ANN. § 7-13-1501 did not equate to their understanding of "expungement." (Ex. A). Specifically, the BATF stated that "any person convicted of a misdemeanor crime of domestic violence who later receives an 'expungement' in accordance with newly enacted WYO. STAT. ANN. § 7-13-1501 will continue to be prohibited, by 18 U.S.C. § 922(g)(9), from shipping, transporting, receiving, or possessing firearms and ammunition." (Ex. A at 3). The BATF did not threaten any action in that letter.

3

In July 2005, the BATF sent another letter to the Wyoming Attorney General wherein they essentially reiterated their position stated in the August 2004 letter. (Ex. C). However, in addition, the BATF threatened to "alert Federally licensed firearms dealers in [Wyoming] that they can no longer accept [CCW] permits as a NICS check alternative" unless the Attorney General agreed to refuse to issue CCW permits to persons who had received an expungement under WYO. STAT. ANN. § 7-13-1501. (Ex. C at 2).

In August 2005, Wyoming responded, disputing BATF's legal analysis and questioning their authority to make such determinations. (Ex. D). The BATF refused to reverse its interpretation of federal and Wyoming law. (Ex. E). Instead, the BATF placed an ultimatum on the Wyoming Attorney General by stating:

> If you would like the Wyoming permit to continue to qualify as a NICS alternative, by April 14, 2006, either (1) tell us that these permits will not be issued to persons with section 7-13-1501 expungements or (2) present us with draft legislation that will address the problem. [(Ex. E at 4)].

On March 9, 2006, the BATF reneged on the draft legislation option and stated Wyoming's CCW permit holders would no longer qualify for the NICS check exemption under 18 U.S.C. § 922(t)(3)(A) unless the Attorney General agreed, by April 14, 2006, to refuse to issue CCW permits to persons whose records were expunged pursuant to WYO. STAT. ANN. § 7-13-1501. (Ex. F). That deadline was later extended to May 15, 2006. (Ex. G).

4

On May 8, 2006, Wyoming filed its COMPLAINT against the BATF in the instant matter. The BATF and Wyoming have agreed that, during the pendency of this action, the BATF will refrain from sending notification to FFL dealers that they may not accept Wyoming's CCW permits as a NICS check alternative in exchange for Wyoming's agreement not to issue any CCW permits to persons who have received an expungement pursuant to WYO. STAT. ANN. § 7-13-1501.

## SUMMARY OF THE ARGUMENT

The BATF has threatened to punish thousands of law abiding gun owners who have undertaken the necessary steps to obtain a Wyoming CCW permit. (*See Aff. of Christopher W. Lynch*). In making this threat, the BATF demands that the Wyoming Attorney General must ignore a duly passed and enacted Wyoming statutory scheme. The BATF makes this extraordinarily heavy-handed threat because it erroneously believes that WYO. STAT. ANN. § 7-13-1501 does not "expunge" a prior misdemeanor crime of domestic violence. The BATF's decision is based on irrelevant case law interpreting the federal sentencing guidelines.

The fallacy of the BATF's position is exposed by the fact that the Wyoming statute which causes the BATF such consternation is allegedly defective because law enforcement officials still have access to information concerning a conviction which has been "expunged" or "set-aside." Without this Court's intervention, the BATF will cause thousands of law

abiding gun owners to undergo unnecessary criminal background checks. (*See Aff. of Christopher W. Lynch*). The BATF's threat to punish law abiding gun owners and to require the Wyoming Attorney General to ignore Wyoming statutes is in direct contravention of federal law and must be enjoined by the court.

## STANDARD OF REVIEW

Section 706(2) of the APA governs the judicial review of the First and Second Causes of Action in the COMPLAINT. In accordance with Section 706, the reviewing court shall hold unlawful and set aside agency action found to be arbitrary, capricious, contrary to constitutional right, in excess of statutory limitations, or otherwise not in accordance with law. *See* 5 U.S.C. § 706(2)(A)-(C). An agency decision is arbitrary or capricious if: (i) the agency entirely failed to consider an important aspect of the issue; (ii) the agency's explanation for the decision was counter to the evidence before it; (iii) the agency relied on factors that Congress did not intend for it to consider; or (iv) the agency's decision is so implausible that it could not be attributed to a difference in view or the product of agency expertise. *Lamb v. Thompson,* 265 F.3d 1038, 1046 (10th Cir. 2001) (citation omitted); *Colorado Envt'l Coalition v. Dombeck,* 185 F.3d 1162, 1167 (10th Cir. 1999).

To determine whether an agency's decision is arbitrary and capricious, the reviewing court must consider whether the agency based its decision on a consideration of relevant factors and whether the agency has committed a clear error of judgment. *Custer County*

6

*Action Ass'n v. Garvey*, 256 F.3d 1024, 1029 (10th Cir. 2001). The reviewing court cannot

supply a reasoned basis for an agency decision that the agency itself has not given. *Citizens'*

*Comm. to Save Our Canyons v. United States Forest Serv.*, 297 F.3d 1012, 1035 (10th Cir.

2002). The reviewing court's inquiry "'must be searching and careful, but the ultimate

standard of review is a narrow one.'" *Custer County Action Ass'n*, 256 F.3d at 1029, *quoting*

*Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989).

## ARGUMENT

**I.    The BATF's decision that WYO. STAT. ANN. § 7-13-1501 does not remove a federal firearm disability was arbitrary and capricious.**

Under 18 U.S.C. § 922(g)(9), it is unlawful for any person "who has been convicted

in any court of a misdemeanor crime of domestic violence," to possess a firearm. However,

under 18 U.S.C. § 921(a)(33)(B)(ii):

> A person shall not be considered to have been convicted of such
> an offense for purposes of this chapter if the conviction has been
> expunged or set aside, or is an offense for which the person has
> been pardoned or has had civil rights restored (if the law of the
> applicable jurisdiction provides for the loss of civil rights under
> such an offense) unless the pardon, expungement, or restoration
> of civil rights expressly provides that the person may not ship,
> transport, possess, or receive firearms.

In Wyoming, a person who has been convicted of a misdemeanor crime of domestic

violence may have that conviction "expunged or set aside" as contemplated by Congress in

7

18 U.S.C. § 921(a)(33)(B)(ii).  *See* WYO. STAT. ANN. § 7-13-1501.[2]  The BATF takes umbrage with Wyoming's use of the word "expungement."

The BATF posits that "expungement" in WYO. STAT. ANN. § 7-13-1501 does not comport with the federal definition (or standard) of "expungement." (Ex. C at 2; Ex. E at 2-3 & 5).  The BATF is mistaken– WYO. STAT. ANN. § 7-13-1501 does meet a federal standard for "expungement."  However, the statement itself incorrectly assumes that "expungement" under WYO. STAT. ANN. § 7-13-1501 must comport with some federal definition.

## A.      State law defines "expungement."

Congress did not define the term "expunge" in the Gun Control Act (GCA).  *See* 18 U.S.C. §§ 921-931.  The BATF has not defined "expungement" in its regulations concerning the GCA.  *See* 27 C.F.R. § 478.11.  Further, no federal court has defined "expungement" for purposes of the GCA.  However, the GCA itself mandates that it is state law which defines "expungement" for purposes of the GCA.  Under 18 U.S.C. § 921(a)(20), "[w]hat constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held."[3]

---

[2]  The statute is entitled "**Petition for expungement of records of conviction of misdemeanors; filing fee; notice; objections; hearing; definitions**."

[3]  Federal courts look to caselaw interpreting 18 U.S.C. § 921(a)(20) (*felony* restoration of firearms rights statute) when analyzing the restoration provisions of 18 U.S.C. § 921(a)(33)(B)(ii).  *See United States v. Brailey*, 408 F.3d 609, 612-13 (9th Cir. 2005); *United States v. Wegrzyn*, 305 F.3d 593, 595 (6th Cir. 2002); *United States v. Smith*, 171 F.3d

The choice of law provision found in 18 U.S.C. § 921(a)(20) was Congress's response to a Supreme Court ruling that federal law determined if state expunctions eliminated federal firearms disabilities. A brief sojourn into the history of events leading up to Congress's amendment of 18 U.S.C. § 921(a)(20) makes Congress's intent clear, and demonstrates how BATF acted contrary thereto. In 1983, the Supreme Court held that prior convictions, for purposes of section 922(g) violations, were to be determined according to federal law, and that state expunctions of state convictions would not avoid the firearm disability. *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 111-12 (1983). Congress legislatively overruled "*Dickerson* and like rulings by enacting in 1986 the Firearms Owners' Protection Act, 100 Stat. 449, which in pertinent part amended section 921(a)(20)'s definition of predicate offenses" to be in accordance with the law of the jurisdiction of conviction. *United States v. Indelicato*, 97 F.3d 627, 628 (1ˢᵗ Cir. 1996).

The Firearm Owners Protection Act demonstrates that Congress unequivocally intended for states to decide whether to eliminate a federal firearm disability that flows from a state conviction. "As the Senate Committee Report expressly recognized, the effect of [18 U.S.C. § 921(a)(20)] is to allow a state to determine who will be subject to federal

---

617, 623 (8ᵗʰ Cir. 1999). Even the BATF has conceded "that the analysis used in section 921(a)(20) applies in the [misdemeanor domestic violence] context contained in section 921(a)(33)." (Ex. E at 2).

9

prosecution under the Act."[4] *United States v. Bost*, 87 F.3d 1333, 1334 (D.C. Cir. 1996) (internal citation omitted). "It was the unmistakable intent of Congress to eliminate the disabling effect of a felony conviction when the state of conviction has made certain determinations, embodied in state law, regarding a released felon's civil rights and firearms privileges." *United States v. Cassidy*, 899 F.2d 543, 546 (6th Cir. 1990). "Congress's intent in enacting § 921(a)(20) was to make it clear that states would henceforth have the ability to wipe the slate clean with respect to particular convictions by issuing pardons and by other similar individualized and affirmative procedures such as expungement or restoration of rights." *United States v. Ramos*, 961 F.2d 1003, 1010 (1st Cir. 1992), *modified by United States v. Caron*, 77 F.3d 1, 5 (1st Cir. 1996) (eliminating the individualized procedure requirement; instead recognizing an automatic restoration of civil rights as removing firearm disabilities). "[W]e take into account . . . the clearly manifested purpose of Congress to defer to state laws, in this context, in determining predicate convictions and the removal of firearm disqualifications." *Caron*, 77 F.3d at 3.

The phrase "[w]hat constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held" is unambiguous. 18 U.S.C. § 921(a)(20). In addition, 18 U.S.C. § 921(a)(20) does not allow

---

[4] The Senate Committee Report which the *Bost* court was referring to can be found at S.Rep. No. 583, 98th Cong., 2d Sess. 7 n.16 (1984).

for comparison to some "federal standard" as the BATF asserts. (Ex. E at 2). Such a reading would render 18 U.S.C. § 921(a)(20) meaningless and contravene "the express intent of Congress." *See United States v. Hubenka*, 438 F.3d 1026, 1031 (10th Cir. 2006) (citations omitted) ("when Congress has addressed the precise question at issue, [the court will] give effect to the express intent of Congress"); *Lamb,* 265 F.3d at 1052 (when Congress's intent is clear from the structure of the statute, a court does not defer to an agency's interpretation).

Congress has spoken. Whether someone has a "conviction" in Wyoming must be determined according to Wyoming law. *See* 18 U.S.C. § 921(a)(20). Further, Wyoming's legislature could not have been clearer that the intended effect of a successful application under WYO. STAT. ANN. § 7-13-1501 was to negate any firearms disability. Accordingly, under Wyoming law, "[a] person shall not be considered to have been convicted of [misdemeanor domestic violence] for purposes of [section 922] if the conviction has been expunged or set aside" under WYO. STAT. ANN. § 7-13-1501. 18 U.S.C. § 921(a)(33)(B)(ii).

By insisting that WYO. STAT. ANN. § 7-13-1501 be compared to a "federal standard", the BATF "relied on factors that Congress did not intend for it to consider." *Lamb,* 265 F.3d at 1046. Accordingly, the BATF's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

**B.    Even assuming federal law controls, the provisions of WYO. STAT. ANN. § 7-13-1501 allow an applicant the opportunity to "expunge" or "set-aside" their**

11

**conviction, and it satisfies any federal law requirement regarding the removal of a federal firearm disability.**

As stated above, there is no federal definition of "expungement" as that term is used in the GCA. In a desperate attempt to reach a result Congress did not intend, the BATF attempted to create a "federal standard" of "expungement" for purposes of the GCA by citing to numerous cases which involve prior offenses under the federal sentencing guidelines (U.S.S.G.). (Ex. A at 2-3; Ex. E at 2).

However, the U.S.S.G. take a very narrow approach as to what constitutes an "expungement" because "counting adult diversionary dispositions . . . reflects a policy that defendants who receive the benefit of a rehabilitative sentence and continue to commit crimes should not be treated with further leniency." U.S.S.G. § 4A1.2, cmt. n. 9. That reasoning does not apply here. Under WYO. STAT. ANN. § 7-13-1501, a successful applicant is not receiving further leniency for future bad acts. To the contrary, WYO. STAT. ANN. § 7-13-1501 can only be utilized by first time offenders who have successfully completed all conditions of their sentence, including court ordered programs. Wyoming has demonstrated to the BATF that the definition of "expungement" under the U.S.S.G. is irrelevant in the context of the GCA (Ex. D at 3), but heretofore, the BATF has refused to concede the obvious distinction. (Ex. E at 2); *see Sierra Club-Black Hills Group v. United States Forest Serv.*, 259 F.3d 1281, 1286 (10th Cir. 2001) (court does not defer to agency's interpretation

12

of how one Act affects the scope of another); *Cascade Natural Gas Corp. v. F.E.R.C.*, 955 F.2d 1412, 1415 (10th Cir. 1992) (court is "under no obligation to defer to the agency's legal conclusions").

The crux of the BATF's argument is that WYO. STAT. ANN. § 7-13-1501 does not meet the "federal standard" of "expungement" because it allows for information of the prior domestic violence conviction to remain available to law enforcement, and because the expungement would not allow a person to avoid enhanced penalties were they to offend again. (Ex. A at 2; Ex. C at 1-2; Ex. E at 4). Thus, the BATF objects to a Wyoming law which actually provides additional facts and information to Wyoming law enforcement regarding repeat offenders, and prevents those repeat offenders from avoiding enhanced penalties.

However, more importantly, the BATF's exclusive focus on the word "expunge" completely ignored the question of whether the operative effect of WYO. STAT. ANN. § 7-13-1501 eliminates a conviction for domestic violence under *any* of the methods provided for in 18 U.S.C. § 921(a)(33)(B)(ii). Although the U.S.S.G. only recognize "expungements" as eliminating convictions, the GCA recognizes a variety of state proceedings as eliminating convictions–including "set-asides." *See* 18 U.S.C. § 921(a)(33)(B)(ii). A conviction which has been "set aside" is also not considered a conviction according to the meaning of terms in 27 C.F.R. § 478.11. *See also* 27 C.F.R. § 478.142 ("any expunction, reversal, setting aside

13

of a conviction or other proceeding rendering a conviction nugatory, or a restoration of civil rights shall remove any disability which otherwise would be imposed").

As the BATF admits "it is not the label, but the 'substance' of the procedure that a Court must consider." *Kegler v. United States*; 06-CV-00009-J (D.WYO.); REPLY IN SUPP. OF DEFS. MOT. TO DISMISS at 1. The "substance" of WYO. STAT. ANN. § 7-13-1501 is to, at a minimum, "set-aside" the conviction of a successful applicant.

Under WYO. STAT. ANN. § 7-13-1501(a):

> A person who has pleaded guilty or nolo contendere to or been convicted of a misdemeanor or misdemeanors arising out of the same occurrence or related course of events may petition the convicting court for an expungement of the records of conviction for the purpose of restoring any firearm rights lost[.]

However, before receiving any such an expungement under WYO. STAT. ANN. § 7-13-1501, the following conditions must be met: (1) at least one year must have passed since the expiration of the terms of the sentence (including probation or completion of a court ordered program); (2) the misdemeanor crime for which the applicant is seeking expungement must not have involved a firearm; (3) the prosecuting attorney must review the petition and provide notice to the victim (either of whom may object to the petition); and (4) the court must make a specific finding that the petitioner does not represent a substantial danger to himself, any identifiable victim, or society. WYO. STAT. ANN. § 7-13-1501.

14

If granted, the court places the "court files under seal, available for inspection only by order of that court." WYO. STAT. ANN. § 7-13-1501(g). A successful petitioner may only take advantage of the provisions of WYO. STAT. ANN. § 7-13-1501 once, and an "expunged" conviction, or conviction which has been "set-aside," will still "affect the enhancement of penalties for second or subsequent convictions of misdemeanors under the laws of [Wyoming]." WYO. STAT. ANN. § 7-13-1501(k).[5]

Ironically, the U.S.S.G provides the best support for the proposition that WYO. STAT. ANN. § 7-13-1501 operates to "set-aside" the conviction of a successful applicant. Under the U.S.S.G., a "set-aside" has been determined to be a conviction which is removed "for reasons unrelated to innocence or errors of law, *e.g.*, in order to restore civil rights or remove the stigma associated with a criminal conviction." U.S.S.G. § 4A1.2 cmt. n.10; *see also United States v. Wacker*, 72 F.3d 1453, 1479 (10th Cir. 1995) ("set-aside" under the Youth Corrections Act is for reasons unrelated to innocence or errors of law and could be used for purposes of sentence enhancement).

---

[5] The procedure in WYO. STAT. ANN. § 7-13-1501 is similar to several other states's statutes whose objective is to "set-aside" a conviction. *See* ALASKA STAT. § 12.55.085; ARIZ. REV. STAT. § 13-921; D.C. CODE ANN. § 24-906; LA CODE CRIM. PROC. ANN., art. 894; MICH. COMP. LAWS ANN. § 780.621-623; NEB. REV. STAT. § 29-2264.

15

Wyoming concedes that WYO. STAT. ANN. § 7-13-1501 is a process which is unrelated to innocence or errors of law. Wyoming also concedes that a person receiving an "expungement" under WYO. STAT. ANN. § 7-13-1501 is not immune from enhanced penalties for a second or subsequent offense. Accordingly, the operative effect of WYO. STAT. ANN. § 7-13-1501 is to, at a minimum, "set-aside" the conviction of a successful applicant.

Further, the proceeding is a particularized inquiry designed to determine the trustworthiness of the individual to possess firearms which is precisely what Congress wanted state authorities to do. *See Bost*, 87 F.3d at 1334; *Cassidy*, 899 F.2d at 546; *Caron*, 77 F.3d at 3. The procedure, as described above, seemingly meets the definition of "expungement" as used in *United States v. Johnson*, 941 F.2d 1102, 1111 (10th Cir. 1991): "With respect to criminal records, expunction refers to the process of *sealing, or destroying* the record of a criminal conviction after expiration of a certain time. BLACK'S LAW DICTIONARY at 522 (5th ed.1979)." (Emphasis added). However, at a minimum, WYO. STAT. ANN. § 7-13-1501 is the equivalent of a federal "set-aside."

Accordingly, even utilizing the BATF's chosen U.S.S.G. "federal standard," it is obvious that the "'substance' of the procedure"[6] found in WYO. STAT. ANN. § 7-13-1501 equates to a "set-aside" of misdemeanor convictions. Since a conviction "set-aside" is not

---

[6] *Kegler v. United States*; 06-CV-00009-J; REPLY IN SUPP. OF DEFS. MOT. TO DISMISS at 10.

16

a conviction under 18 U.S.C. § 921(a)(33)(B)(ii), a successful applicant under WYO. STAT. ANN. § 7-13-1501 must have their federal firearms disability removed.

Applying the definition of arbitrary and capricious, the BATF "entirely failed to consider"[7] that WYO. STAT. ANN. § 7-13-1501 may "set-aside" a conviction. Further, given the analysis above, even if the BATF had considered it, a contrary conclusion would be "so implausible that it could not be attributed to a difference in view or the product of agency expertise." *Lamb,* 265 F.3d at 1046. Accordingly, the BATF's decision that WYO. STAT. ANN. § 7-13-1501 does not remove a federal firearms disability was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## II.     The BATF's decision that Wyoming's CCW permits do not qualify as an exception to the NICS check under 18 U.S.C. § 922(t)(3)(A) was arbitrary, capricious and in excess of BATF's statutory jurisdiction and authority.

If this Court finds that WYO. STAT. ANN. § 7-13-1501 "expunges" or "sets-aside" a misdemeanor conviction, then logically it should find that Wyoming's CCW permits qualify as an exception to the NICS check requirement under 18 U.S.C. § 922(t)(3)(A). It would also follow that the BATF's decision that Wyoming's CCW permits do not qualify as an exception to the NICS check was arbitrary and capricious. However, declaratory relief

---

[7] *Lamb,* 265 F.3d at 1046.

should also be granted for the alternative reason that the BATF has exceeded its statutory jurisdiction and authority.

Under 18 U.S.C. § 922(t)(1), Federal Firearms License (FFL) dealers must perform a NICS check on firearms purchasers before consummating the sale or transfer. Under 18 U.S.C. § 922(t)(3)(A), FFL dealers may forego the NICS check if the firearms purchaser possesses a qualifying CCW permit. Specifically, the 18 U.S.C. § 922(t)(3)(A) exception states a NICS check is unnecessary if:

> (i) [the purchaser] presented to the licensee a permit that--
>
> > (I) allows such other person to possess or acquire a firearm; and
> > (II) was issued not more than 5 years earlier by the State in which the transfer is to take place; and
>
> (ii) the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by such other person would be in violation of law.[8]

Wyoming does not dispute that, as the agency in charge of administering 18 U.S.C. § 922(t)(3)(A), the BATF is entitled to some deference as to whether various state statutes include those requirements. *See Hubenka*, 438 F.3d at 1031 *citing Chevron U.S.A., Inc. v.*

---

[8] The text of 27 C.F.R. § 478.102(d) is almost identical to 18 U.S.C. § 922(t)(3)(A).

18

*Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).  However, "[a]n agency's interpretation of a statute is not entitled to deference when it goes beyond the meaning that the statute can bear." *Lamb,* 265 F.3d at 1052, n. 16, *quoting MCI Telecomms. Corp. v. Am. Tel. & Tel. Co.,* 512 U.S. 218, 229 (1994).  Further, "[a]lthough [a court will] afford deference to the agency's interpretation of a statute under its purview, [a court] cannot overlook an interpretation that flies in the face of the statutory language." *Id.* at 1052, n. 16 (citation omitted); *see also Johnston v. Volunteers of America*, 213 F.3d 559, 562 (10th Cir. 2000) (a court is "not bound by an agency's interpretation of a statute that is unreasonable").

Wyoming's CCW permitting system is found in WYO. STAT. ANN. § 6-8-104(b). (*See* Attach. 2).  In accordance with 18 U.S.C. § 922(t)(3)(A)(i), a permit under WYO. STAT. ANN. § 6-8-104(b) is only valid for five years and allows permittees to possess and carry a concealed firearm.  In accordance with 18 U.S.C. § 922(t)(3)(A)(ii), the permit can only be issued after the Wyoming Attorney General determines that the applicant is not "ineligible to possess a firearm pursuant to 18 U.S.C. section 922(g) or W.S. 6-8-102 ." WYO. STAT. ANN. § 6-8-104(b)(iv). The foregoing provisions comply with the requirements of 18 U.S.C. § 922(t)(3)(A)(i) & (ii).  That is the extent to which the statute could reasonably be interpreted to allow the BATF to determine compliance with 18 U.S.C. § 922(t)(3)(A)(i) & (ii).

19

The BATF's actions in this case extend beyond that determination. Instead, the BATF, through their actions, have assumed the role which Congress intended the state permitting official hold. The BATF decided that since WYO. STAT. ANN. § 7-13-1501 does not, according to the BATF, "expunge" convictions for the purposes of the GCA, then CCW permits issued pursuant thereto would run afoul of the requirement in 18 U.S.C. § 922(t)(3)(A) that the permit holder not be ineligible to possess a firearm. (Ex. C at 1-2).

That determination eviscerates the plain language of 18 U.S.C. § 922(t)(3)(A) which states that it is the "authorized governmental official" that verifies that the applicant would not be ineligible to possess firearms, not the BATF. 18 U.S.C. § 922(t)(3)(A). In Wyoming that "authorized governmental official" is the Wyoming Attorney General. WYO. STAT. ANN. § 6-8-104(b). The BATF's decision usurps the judgment of the Wyoming Attorney General who, as the "authorized government official," is the person Congressionally mandated to determine whether a CCW applicant would or would not be in "violation of law." 18 U.S.C. § 922(t)(3)(A).

Nothing in 18 U.S.C. § 922(t)(3)(A), or its companion regulation, states that the BATF may substitute its judgment for that of the Wyoming Attorney General. The BATF's interpretation "flies in the face of the statutory language" and would stretch BATF's entitlement to deference "beyond the meaning that the statute can bear." *Lamb,* 265 F.3d at 1052, n. 16 (citations omitted). Accordingly, the reasoning behind BATF's ultra vires

20

decision that Wyoming's CCW permits do not qualify as an exception to the NICS check under 18 U.S.C. § 922(t)(3)(A) exceeds the BATF's statutory jurisdiction and authority.

## III.    The BATF's demands on state authorities violate the Tenth Amendment to the United States Constitution.

The Tenth Amendment to the United States Constitution provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the State, are reserved to the States respectively, or to the people." The Tenth Amendment precludes the Federal government from commandeering the legislative processes of a state by directly compelling the state to enact and enforce a federal regulatory program. *Kelley v. United States*, 69 F.3d 1503, 1509 (10th Cir. 1995), *citing New York v. United States*, 505 U.S. 144, 145 (1992). Further, "Congress cannot circumvent that prohibition by conscripting the State's officers directly." *Printz v. United States*, 521 U.S. 898, 935 (1997).

Congress has regulated interstate commerce through 18 U.S.C. § 922(t)(3)(A), by specifically providing that state law shall control whether someone has a firearm disability. No doubt, Congress could enact a federal permitting system whereby the BATF issues the permits which qualify as an exemption to a NICS check. However, Congress having chosen not to legislate, the BATF cannot interpret the GCA to give the federal government authority to dictate how state officials shall administer state law.

21

The BATF's interpretation of 18 U.S.C. § 922(t)(3)(A) would mean that Congress intended each state essentially cede their respective weapons permitting system to the BATF. The BATF's position is premised on the notion that Congress intended BATF be the final arbiter of whether "possession of a firearm by such other person would be in violation of law." 18 U.S.C. § 922(t)(3)(A)(ii). As discussed above, such a construction is beyond what the statute may bear. However, if BATF's construction is accurate then each state would merely be performing the administrative function for a federal weapons permitting program. *See Oklahoma v. United States*, 161 F.3d 1266, 1269-70 (10th Cir. 1998) ("Where a federal interest is sufficiently strong to cause Congress to legislate, it must do so directly; it may not conscript state governments as its agents.").

The BATF's mandate that the Wyoming Attorney General desist in issuing CCW permits to persons who have had their convictions expunged pursuant to WYO. STAT. ANN. § 7-13-1501 violates the Tenth Amendment because it conscripts the Wyoming Attorney General into serving as part of a federal weapons permitting system. *See Printz*, 521 U.S. at 935. Similarly, the BATF's attempt to commandeer Wyoming's legislature into drafting legislation which would be acceptable to the BATF (Ex. C at 2) violates the Tenth Amendment because "[s]tate legislatures are not subject to federal direction." *Printz*, 521 U.S. at 912, *citing New York v. United States*, 505 U.S. 144 (1992).

22

## CONCLUSION

For the foregoing reasons, this Court should declare that an expungement under WYO. STAT. ANN. § 7-13-1501 removes a firearm disability; that the BATF arbitrarily and capriciously, or in excess of their authority, decided that Wyoming CCW permits do not qualify as an exception to the NICS check requirement under 18 U.S.C. § 922(t)(3)(A); and that the BATF's demands on state authorities violate the Tenth Amendment to the United States Constitution. This Court should issue an injunction ordering the BATF to refrain from requiring FFL licensees to perform a NICS check before transferring a firearm to Wyoming's CCW permit holders.

Respectfully submitted this 16th day of August, 2006.

Patrick J. Crank
Attorney General

C. Levi Martin
Senior Assistant Attorney General
123 Capitol Building
Cheyenne, Wyoming   82002
(307) 777-7841
(307) 777-3542   Fax

Attorneys for Appellant State of Wyoming

23

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing BRIEF OF APPELLANT was served by placing the same in the United States mail, postage prepaid, this 16th day of August, 2006, to the following:

Alexander Haas
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Br.
20 Massachusetts Ave. NW, Room 7328
Washington, DC   20530

Matthew H. Mead
United States Attorney
2120 Capitol Avenue, 5th Floor
Cheyenne, WY  82001

Carol A. Statkus
Assistant United States Attorney
2120 Capitol Avenue, 5th Floor
Cheyenne, WY  82001

_____
Office of the Attorney General

24

Patrick J. Crank
Attorney General

C. Levi Martin
Senior Assistant Attorney General
123 Capitol Building
Cheyenne, WY 82002
(307) 777- 7841
(307) 777-6869 facsimile

Attorneys for the Appellant State of Wyoming

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| State of Wyoming, *ex rel.*, Patrick J. Crank, Wyoming Attorney General; ) ) | |
| ) Appellant, ) | |
| ) v. ) | Civil Action No. 06-CV-0111-J |
| ) UNITED STATES; Bureau of Alcohol, Tobacco, ) Firearms, & Explosives; Carl J. Truscott, ) in his official capacity as Director of Bureau of ) Alcohol, Tobacco, Firearms, & Explosives ) and David H. Chipman, in his official capacity as ) the Chief, Firearms Division, Bureau of Alcohol, ) Tobacco, Firearms, & Explosives; ) ) Appellees. ) | |

### AFFIDAVIT OF CHRISTOPHER W. LYNCH

*Affidavit of Christopher Lynch*
Page 1 of 3

Comes now, the undersigned, Christopher W. Lynch and hereby swears or affirms as follows:

1)      I am a person over eighteen (18) years of age.  Affiant is not currently under the influence of any substance that would impair or limit his ability to swear or affirm to the truth of the matters asserted herein;

2)      I am not suffering from any disease, defect, or condition that would impair or limit my ability to swear to or affirm the truth of the matters asserted herein, nor has Affiant been determined to be mentally incompetent by a court or other similar tribunal;

3)      I am an employee of the Wyoming Department of Criminal Investigation (DCI).  I am employed as the Records Analyst.  I have been employed with DCI in that capacity since _10/5/2004_;

4)      As of August 11, 2006, there are 10, 766 CCW permit holders in Wyoming;

### REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

*Affidavit of Christopher W. Lynch*
Page 2 of 3

Furthermore the affiant sayeth not.

DATED this __15__ day of August, 2006.

Christopher Lynch
Records Analyst
Wyo. Div. of Criminal Investigation.
316 West 22nd
Cheyenne, Wyoming 82002-0150


STATE OF WYOMING    )
                    ) ss.
COUNTY OF LARAMIE   )

 The foregoing document was hereby acknowledged personally before me by Christopher W. Lynch this __15__ day of __August__, 2006.

 WITNESS my hand and official seal.

Notary Public

My commission expires:



*Affidavit of Christopher W. Lynch*
Page 3 of 3

**The 2005 amendment** transferred the provisions pertaining to dispositions pursuant to §§ 7-13-301, 35-7-1037, and 7-13-203 from (a)(i)(A) to (a)(i).

Laws 2005, ch. 137, § 2, makes the act effective immediately upon completion of all acts necessary for a bill to become law as provided by art. 4, § 8, Wyo. Const. Approved February 25, 2005.

**Editor's notes.** — There is no subsection (i) in this section as it appears in the printed acts.

# ARTICLE 15. EXPUNGEMENT OF RECORDS OF CONVICTIONS

## § 7-13-1501. Petition for expungement of records of conviction of misdemeanors; filing fee; notice; objections; hearing; definitions.

(a) A person who has pleaded guilty or nolo contendere to or been convicted of a misdemeanor or misdemeanors arising out of the same occurrence or related course of events may petition the convicting court for an expungement of the records of conviction for the purposes of restoring any firearm rights lost, subject to the following limitations:

(i) At least one (1) year has passed since the expiration of the terms of sentence imposed by the court, including any periods of probation or the completion of any program ordered by the court;

(ii) Other than convictions arising out of the same occurrence or related course of events, the petitioner has not previously pleaded guilty or nolo contendere to or been convicted of a misdemeanor for which firearm rights have been lost;

(iii) The misdemeanor or misdemeanors for which the person is seeking expungement shall not have involved the use or attempted use of a firearm.

(b) A petition filed under this section shall be verified by the petitioner and served upon the prosecuting attorney and the division of criminal investigation. The filing fee for each petition filed under this section shall be one hundred dollars ($100.00) and shall be deposited in accordance with W.S. 5-9-144.

(c) The prosecuting attorney shall serve notice of the petition for expungement by certified mail, return receipt requested, to any identifiable victims of the misdemeanors at their last known addresses of record on file with the prosecuting attorney. The notices shall include a copy of the petition and statutes applicable to the petition. In the event that there are no identifiable victims, or that there is at least one (1) identifiable victim and the prosecuting attorney has no address of record on file or the notice sent was returned or is otherwise undeliverable, the prosecuting attorney shall notify the court and shall be deemed to have complied with the provisions of this subsection.

(d) The court in its discretion may request a written report by the division of criminal investigation concerning the criminal history of the petitioner.

(e) The prosecuting attorney shall review the petition and shall file with the court an objection or recommendation, if any, to the petition within thirty (30) days after service of the notice by the petitioner upon the prosecuting attorney. If the prosecuting attorney or an identifiable victim submits a written objection to the court concerning the petition within thirty (30) days after service of the notice by the petitioner upon the prosecuting attorney, or if the petitioner objects to the criminal history report of the division of criminal investigation if requested by the court, the court shall set a date for a hearing and notify the prosecuting attorney, the identifiable victims who have submitted written objections to the petition, the division of criminal investigation and the petitioner of the date set for the hearing. Any person who has relevant information about the petitioner may testify at the hearing.

(f) If no objection is filed to the petition within thirty (30) days after service of the notice by the petitioner upon the prosecuting attorney, the court may summarily enter an order if the court finds that the petitioner is otherwise eligible for relief under this section. No order granting expungement shall be issued prior to the expiration of thirty (30) days after service was made to the prosecuting attorney.

(g) If the court finds that the petitioner is eligible for relief under this section and that the petitioner does not represent a substantial danger to himself, any identifiable victim or society, it shall issue an order granting expungement of the applicable records. The court shall also place the court files under seal, available for inspection only by order of that court. The court shall transmit a certified copy of the order to the division of criminal investigation.

(h)  The state, through the prosecuting attorney, may appeal any order of expungement issued by any court under this section.

(j)  Notwithstanding W.S. 1-39-101 through 1-39-120, the division of criminal investigation and its employees and any prosecuting attorney are immune from liability, either as an agency or individually, for any actions, inactions or omissions by the agency or any employee thereof, pursuant to this section.

(k)  An expungement granted pursuant to this section shall only be used for the purposes of restoring firearm rights that have been lost to persons convicted of misdemeanors. Nothing in this section shall be construed to affect the enhancement of penalties for second or subsequent convictions of misdemeanors under the laws of this state. Nothing in this section shall be construed to allow a person who has previously received an expungement of records of conviction under this section to seek a second or subsequent expungement of records of conviction under this section.

(m)  As used in this section:

(i)  "Expungement" means as defined in W.S. 7-13-1401(j)(i);

(ii)  "Misdemeanor" means as defined by W.S. 6-10-101;

(iii)  "Record" means as defined in W.S. 7-13-1401(j)(ii). (Laws 2004, ch. 69, § 1.)

**Editor's notes.** — There is no subsection (i) or (l) in this section as it appears in the printed acts.

**Effective date.** — Laws 2004, ch. 69, § 2, makes the act effective July 1, 2004.

# CHAPTER 14

# Remedy for Violation of Constitutional Rights

Sec.
7-14-101.  Definition of "this act"; commencement and conduct of proceedings.
7-14-102.  Contents of petition.
7-14-103.  Claims barred; applicability of act.
7-14-104.  No right to appointed counsel.
7-14-105.  Answer by state; withdrawal of petition; amendments and further pleadings.

Sec.
7-14-106.  Evidence received by court; orders entered upon favorable finding; contents of final judgment or order.
7-14-107.  Appellate review.
7-14-108.  Existing statutory provisions.

**Chapter applicable to double jeopardy claims.** — Prisoner's double jeopardy claim should have been asserted through a petition for post-conviction relief pursuant to this chapter, and invoking Rule 35(a), W.R. Cr. P., by a motion for correction of an illegal sentence was an inefficacious method of seeking relief. DeSpain v. State, 865 P.2d 584 (Wyo. 1993).

**Consolidated petition for post-conviction relief and habeas corpus,** filed in the district court of the county of trial and dismissed by the trial judge, was treated by the supreme court as a petition for post-conviction relief for the following reasons: (1) the court's judgment could not be impeached by a writ of habeas corpus; (2) the court in habeas corpus was not authorized to grant a new trial; (3) all issues which could have been raised in a habeas proceeding were raised in the petition for post-conviction relief; and (4) no appeal lay from the denial of the habeas petition. State ex rel. Hopkinson v. District Court, 696 P.2d 54 (Wyo.), cert. denied, 474 U.S. 865, 106 S. Ct. 187, 88 L. Ed. 2d 155 (1985).

**Cited** in Escobedo v. State, 601 P.2d 1028 (Wyo. 1979); Hamill v. Ferguson, 937 F. Supp. 1517 (D. Wyo. 1996), appeal dismissed, 125 F.3d 862 (10th Cir. 1997).

**Law reviews.** — For comment, "Post Conviction Relief: Do It Once, Do It Right and Be Done With It," see XXIV Land & Water L. Rev. 473 (1989).

## § 7-14-101. Definition of "this act"; commencement and conduct of proceedings.

(a)  As used in W.S. 7-14-101 through 7-14-108 "this act" means W.S. 7-14-101 through 7-14-108.

(b)  Any person serving a felony sentence in a state penal institution who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the constitution of the United States or of the state of Wyoming, or both, may institute proceedings under this act. The proceeding shall be commenced by filing with the clerk of the court where the conviction occurred a petition verified by affidavit. A copy of the petition shall be served by the inmate on the Wyoming attorney general by certified or registered mail. The clerk shall docket the petition upon receipt and bring it promptly to the attention of the court.

### § 6-8-104. Wearing or carrying concealed weapons; penalties; exceptions; permits.

(a)  A person who wears or carries a concealed deadly weapon is guilty of a misdemeanor punishable by a fine of not more than seven hundred fifty dollars ($750.00), imprisonment in the county jail for not more than six (6) months, or both, unless:

(i)  The person is a peace officer;

(ii)  The person possesses a permit under this section; or

(iii)  The person holds a valid permit authorizing him to carry a concealed firearm authorized and issued by a governmental agency or entity in another state that recognizes Wyoming permits, is a valid statewide permit, and the state has laws similar to the provisions of this section, as determined by the attorney general, including a proper background check of the permit holder.

(b)  The attorney general is authorized to issue permits to carry a concealed firearm to persons qualified as provided by this subsection. The attorney general shall promulgate rules necessary to carry out this section no later than October 1, 1994. Applications for a permit to carry a concealed firearm shall be made available and distributed by the division of criminal investigation and local law enforcement agencies. The permit shall be valid throughout the state for a period of five (5) years from the date of issuance. The permittee shall carry the permit, together with valid identification at all times when the permittee is carrying a concealed firearm and shall display both the permit and proper identification upon request of any peace officer. The attorney general through the division shall issue a permit to any person who:

(i)  Is a resident of the United States and has been a resident of Wyoming for not less than six (6) months prior to filing the application. The Wyoming residency requirements of this paragraph do not apply to any person who holds a valid permit authorizing him to carry a concealed firearm authorized and issued by a governmental agency or entity in another state that recognizes Wyoming permits, is a valid statewide permit, and the state has laws similar to the provisions of this section, as determined by the attorney general, including a proper background check of the permit holder;

(ii)  Is at least twenty-one (21) years of age;

(iii)  Does not suffer from a physical infirmity which prevents the safe handling of a firearm;

(iv)  Is not ineligible to possess a firearm pursuant to 18 U.S.C. section 922(g) or W.S. 6-8-102;

(v)  Has not been committed to a state or federal facility for the abuse of a controlled substance or convicted of a violation of the Wyoming Controlled Substances Act of 1971, W.S. 35-7-1001 through 35-7-1057 or similar laws of any other state or the United States relating to controlled substances;

(vi)  Does not chronically or habitually use alcoholic liquor and malt beverages to the extent that his normal faculties are impaired. It shall be presumed that an applicant chronically and habitually uses alcoholic beverages to the extent that his normal faculties are impaired if the applicant has been involuntarily committed to any residential facility pursuant to the laws of this state or similar laws of any other state as a result of the use of alcohol;

(vii)  Demonstrates familiarity with a firearm. A legible photocopy of a certificate of completion of any of the courses or classes or a notarized affidavit from the instructor, school, club, organization or group that conducted or taught the course or class attesting to the completion of the course or class by the applicant or a copy of any document which shows completion of the course or class or evidences participation of firearms competition, shall constitute evidence of qualification under this paragraph. Any one (1) of the following activities listed in this paragraph shall be sufficient to demonstrate familiarity with a firearm:

(A)  Completion of any certified firearm safety or training course utilizing instructors certified by the National Rifle Association or the Wyoming law enforcement academy;

(B)  Completion of any law enforcement firearms safety or training course or class offered for security guards, investigators, special deputies, or any division of law enforcement or security enforcement;

(C)  Experience with a firearm through participation in an organized handgun shooting competition or military service;

(D)  Completion of any firearms training or safety course or class conducted by a state certified or National Rifle Association certified firearms instructor;

(E)  Be certified as proficient in firearms safety by any Wyoming law enforcement agency under procedures established by that agency; or

(F)  Honorable retirement as a federal or state peace officer who has a minimum of ten (10) years of service.

(viii)  Is not currently adjudicated to be legally incompetent; and

(ix)  Has not been committed to a mental institution.

(c)  The division may deny a permit if the applicant has been found guilty of or has pled nolo contendere to one (1) or more crimes of violence constituting a misdemeanor offense within the three (3) year period prior to the date on which the application is submitted or may revoke a permit if the permittee has been found guilty of or has pled nolo contendere to one (1) or more crimes of violence constituting a misdemeanor offense within the preceding three (3) years.

(d)  The application shall be completed, under oath, on a form promulgated by the attorney general to include:

(i)  The name, address, place and date of birth of the applicant;

(ii)  A statement that, to the best of his knowledge, the applicant is in compliance with criteria contained within this section;

(iii)  A statement that the applicant has been furnished a copy of this section and is knowledgeable of its provisions;

(iv)  A conspicuous warning that the application is executed under oath and that a materially false answer to any question or the submission of any materially false document by the applicant may result in denial or revocation of a permit and subjects the applicant to criminal prosecution under W.S. 6-5-303.

(e)  The applicant shall submit to the division through the sheriff's office in the county of the applicant's residence:

(i)  A completed application as described in subsection (d) of this section;

(ii)  A nonrefundable permit fee of fifty dollars ($50.00), if he has not previously been issued a statewide permit, or a nonrefundable permit fee of fifty dollars ($50.00) for renewal of a permit;

(iii)  A full set of fingerprints of the applicant administered by a law enforcement agency. The actual cost of processing the set of fingerprints required in this paragraph shall be borne by the applicant;

(iv)  A photocopy of a certificate or an affidavit or document as provided by paragraph (b)(vii) of this section.

(f)  The sheriff's office shall forward items received under subsection (e) of this section but shall retain ten dollars ($10.00) of each original permit fee and five dollars ($5.00) of each renewal permit fee. The division, upon receipt of the items listed in subsection (e) of this section, shall process the full set of fingerprints of the applicant for any criminal justice information. The division shall submit a fingerprint card to the federal bureau of investigation for a national background check. The cost of processing the fingerprints shall be payable to the division.

(g)  The sheriff of the applicant's county of residence shall submit a written report to the division containing any information that he feels may be pertinent to the issuance of a permit to any applicant. The written report shall state facts known to the sheriff which establish reasonable grounds to believe that the applicant has been or is reasonably likely to be a danger to himself or others, or to the community at large as a result of the applicant's mental or psychological state, as demonstrated by a past pattern or practice of behavior, or participation in incidents involving a controlled substance, alcohol abuse, violence or threats of violence as these incidents relate to criteria listed in this section. The written report shall be made within thirty (30) days after the date the sheriff receives the copy of the application. The sheriff of the applicant's county of residence shall notify the chief of police, if any, of the applicant's place of residence of the application for a concealed firearm permit by the applicant. The chief of police shall submit written comments to the division under the guidelines prescribed in this section. Submitted comments shall not be considered a public record.

(h)  The sheriff of the applicant's county of residence may, at his discretion, submit a written report to the division recommending immediate issuance of a concealed firearm permit prior to the mandatory fingerprint processing. The written recommendation shall specifically state that the sheriff has personal knowledge that the applicant is qualified to be issued a permit.

(j)   The sheriff of the applicant's county of residence may, at his discretion, submit a written report to the division recommending the issuance of a concealed firearm permit to an applicant between eighteen (18) and twenty-one (21) years of age who meets the requirements specified in this section. The written recommendation shall specifically state that the sheriff has personal knowledge of the applicant's situation or circumstances which warrant the issuance of a concealed firearm permit. The division may issue a permit to carry a concealed firearm to those individuals between eighteen (18) and twenty-one (21) years of age under circumstances that a reasonable, prudent person would believe warrant the issuance of a permit to carry a concealed firearm. The decision to issue a concealed firearm permit shall be based on the satisfactory completion of the requirements of this section and any voluntary written report offered by the sheriff of the county of the applicant's residence which shall clearly state the reasons the applicant should be issued a permit. The applicant may submit a written report containing relevant facts for consideration by the division.

(k)   An applicant shall pay the cost of fingerprinting services for one (1) set of fingerprints and shall not be charged for any additional services necessary to obtain a legible set of fingerprints.

(m)   The division shall, within sixty (60) days after the date of receipt of the items listed in subsection (e) of this section, either:

    (i)   Issue the permit; or

    (ii)   Deny the application based on the ground that the applicant fails to qualify under the criteria listed in this section or upon reasonable grounds for denial specified under subsection (g) of this section. If the division denies the application, it shall notify the applicant in writing, stating the grounds for denial and informing the applicant of a right to submit, within thirty (30) days, any additional documentation relating to the grounds of denial. Upon receiving any additional documentation, the division shall reconsider its decision and inform the applicant within twenty (20) days of the result of the reconsideration. The applicant shall further be informed of the right to seek review of the denial in the district court pursuant to the Wyoming Administrative Procedure Act, W.S. 16-3-101 through 16-3-115. No person who is denied a permit under this section shall carry a concealed firearm under a permit issued in another state, so long as he remains a resident of this state, and he remains ineligible for a permit in this state.

(n)   The division shall maintain an automated listing of permit holders and pertinent information, and the information shall be available on-line, upon request, at all times to all Wyoming law enforcement agencies.

(o)   Within thirty (30) days after the changing of a permanent address, or within thirty (30) days after the loss or destruction of a permit, the permittee, including any permittee under paragraph (a)(iii) of this section, shall so notify the division. Violation of this subsection may result in cancellation or revocation of the permit.

(p)   In the event that a permit is lost or destroyed, the permit shall be automatically invalid, and the person to whom the same was issued may, upon payment of a five dollar ($5.00) fee to the division, obtain a duplicate, upon furnishing a notarized statement to the division that the permit has been lost or destroyed.

(q)   A permit issued under this section shall be revoked by the division:

    (i)   If the permittee becomes ineligible to be issued a permit under the criteria set forth in this section; or

    (ii)   For any conviction of any offense involving a controlled substance, alcohol abuse while carrying a concealed weapon or any crime of violence or a plea of nolo contendere to any of these crimes.

(r)   Repealed by Laws 1995, ch. 147, § 1.

(s)   The permittee may renew his permit on or before the expiration date by filing with the sheriff of the applicant's county of residence the renewal form, a notarized affidavit stating that the permittee remains qualified pursuant to the criteria specified in this section, and the required renewal fee. The permit shall be renewed to a qualified applicant upon receipt of the completed renewal application, appropriate payment of fees and the division shall verify that the criminal history information available to the division does not indicate that possession of a firearm by the applicant would constitute a violation of state or federal law. A permittee who fails to file a renewal application on or before its expiration date shall renew his permit by paying a late fee of ten dollars ($10.00). No permit shall be renewed six (6) months or more after its expiration date, and the

permit shall be deemed to be permanently expired. A person whose permit has permanently expired may reapply for a permit pursuant to subsections (b) through (e) of this section.

(t)   No permit issued pursuant to this section or any permit issued from any other state shall authorize any person to carry a concealed firearm into:

(i)   Any facility used primarily for law enforcement operations or administration without the written consent of the chief administrator;

(ii)   Any detention facility, prison or jail;

(iii)   Any courtroom, except that nothing in this section shall preclude a judge from carrying a concealed weapon or determining who will carry a concealed weapon in the courtroom;

(iv)   Any meeting of a governmental entity;

(v)   Any meeting of the legislature or a committee thereof;

(vi)   Any school, college or professional athletic event not related to firearms;

(vii)   Any portion of an establishment licensed to dispense alcoholic liquor and malt beverages for consumption on the premises, which portion of the establishment is primarily devoted to that purpose;

(viii)   Any place where persons are assembled for public worship, without the written consent of the chief administrator of that place;

(ix)   Any elementary or secondary school facility;

(x)   Any college or university facility without the written consent of the security service of the college or university; or

(xi)   Any place where the carrying of firearms is prohibited by federal law or regulation or state law.

(u)   All monies collected pursuant to this section shall be deposited in the general fund.

(w)   All funds received by the sheriff pursuant to the provisions of this section shall be deposited into the general fund of the county.

(y)   As used in this section:

(i)   "Division" means the division of criminal investigation within the office of the attorney general;

(ii)   "Firearm" means any pistol, revolver or derringer, designed to be fired by the use of a single hand.

(z)   By March 1 of each year, the division shall submit a statistical report to the governor and to the joint judiciary interim committee indicating the number of permits issued, revoked, suspended and denied.

(aa)   Notwithstanding the provisions of W.S. 1-39-105 through 1-39-112, the attorney general and members of the division of criminal investigation are immune from personal liability for issuing, for failing to issue and for revoking any concealed firearms permit under this section. A sheriff, police chief, employee of a sheriff or police chief's office shall not be personally liable for damages in a civil action arising from any information submitted pursuant to subsections (g) through (j) of this section. Nothing in this section shall relieve any governmental entity of any liability pursuant to W.S. 1-39-101 through 1-39-120 [1-39-101 through 1-39-121].

(bb)   No list or other record maintained by the division or other law enforcement agency pursuant to this section, which identifies an individual applicant or permittee shall be considered a public record. Applications, listings and other records maintained pursuant to this section which identify an individual shall be made available to other law enforcement agencies for purposes of conducting official business. The statistical report provided pursuant to subsection (z) of this section shall be a public record. (Laws 1982, ch. 75, § 3; 1983, ch. 171, § 1; 1994, ch. 41, § 1; 1995, ch. 147, § 1; 1997, ch. 31, § 2; ch. 106, § 1; 2001, ch. 63, § 1; 2003, ch. 141, § 1.)

**Cross references.** — For definition of "deadly weapon," see § 6-1-104.

**Editor's notes.** — There is no subsection (i), (l), (v), or (x) in this section as it appears in the printed acts.

**Subsection (a) is not unconstitutional infringement upon right of citizens to bear arms** in defense of themselves. State v. McAdams, 714 P.2d 1236 (Wyo. 1986).

**Legislative intent.** — This section demonstrates a legislative intent to rely heavily upon expertise of local law enforcement officials in making judgments about individuals who seek concealed firearm permits. Mecikalski v. Office of Att'y Gen., 2 P.3d 1039, 2000 Wyo. LEXIS 110 (Wyo. 2000).

**Procedure.** — This section does not provide for discovery or formal hearing with regard to information provided by local law enforcement officials pursuant to subsection (g). Mecikalski v. Office of Att'y Gen., 2 P.3d 1039, 2000 Wyo. LEXIS 110 (Wyo. 2000).

**Danger to self or others.** — Court is not required to construe language contained in subsection (g) solely in light of definition of "dangerous to himself or

others" set out in § 25-10-101(a)(ii). Mecikalski v. Office of Att'y Gen., 2 P.3d 1039, 2000 Wyo. LEXIS 110 (Wyo. 2000).

**Grounds for denial of permit.** — A single instance in which an applicant manifested danger to himself or others is a reasonable ground for denial of a permit to carry a concealed firearm. Griess v. Office of Att'y Gen., 932 P.2d 734 (Wyo. 1997).

A single isolated incident of an applicant threatening suicide is a reasonable ground to deny an application for a permit to carry a concealed firearm. Griess v. Office of Att'y Gen., 932 P.2d 734 (Wyo. 1997).

**Permit denied for breach of peace conviction.** — The department of criminal investigation (DCI) did not err when it denied a concealed gun permit under 18 U.S.C.S. § 922(g) to an applicant who had been convicted of breach of the peace involving an altercation with his spouse; the "violent action" language in the Wyoming breach of peace statute is included in the federal statute which prohibits those convicted of "domestic violence" from possessing firearms. King v. Wyo. Div. of Crim. Investigation, 89 P.3d 341, 2004 Wyo. LEXIS 63 (2004).

**Twenty-day response period.** — The 20-day response period found in paragraph (m)(ii) is directory and not mandatory; this section does not provide that time is of the essence and contains no language that would negate the exercise of authority after the prescribed time period. Griess v. Office of Att'y Gen., 932 P.2d 734 (Wyo. 1997).

**No prejudice in lengthy delay.** — The delay experienced by the applicant in the division of criminal investigation's failure to deny a permit to carry a concealed weapon within 60 days after the date of receipt of the application did not justify reversing the denial of his application, as there was no showing of prejudice to the applicant's personal rights or the public's interest. King v. Wyo. Div. of Crim. Investigation, 89 P.3d 341, 2004 Wyo. LEXIS 63 (2004).

**Disclosure of records.** — Trial court erred in ordering the director of a state agency to turn over lists of holders of concealed weapons permits within a certain county to a newspaper when the legislative intent indicated that it was the legislature's desire to limit access to such lists. Pagel v. Franscell, 2002 Wyo. LEXIS 190, 57 P.3d 1226 (Wyo. 2002).

**Law reviews.** — For article, "Goodbye 3-Card Monte: The Wyoming Criminal Code of 1982" (part two), see XIX Land & Water L. Rev. 509 (1984).

**Am. Jur. 2d, ALR and C.J.S. references.** — Offense of carrying concealed weapon as affected by manner of carrying or place of concealment, 43 ALR2d 492.

Exception in statute forbidding carrying of weapons, as to person on his own premises, 57 ALR3d 938.

# ARTICLE 2. FIREARMS REGULATION

---

**Law reviews.** — For article, "Goodbye 3-Card Monte: The Wyoming Criminal Code of 1982" (part one), see XIX Land & Water L. Rev. 107 (1984).

For article, "Goodbye 3-Card Monte: The Wyoming Criminal Code of 1982" (part two), see XIX Land & Water L. Rev. 509 (1984).

**Am. Jur. 2d, ALR and C.J.S. references.** — 79 Am. Jur. 2d Weapons and Firearms § 32.

Validity and construction of gun control laws, 28 ALR3d 845.

Liability of one who provides, by sale or otherwise, firearm or ammunition to adult who shoots another, 39 ALR4th 517.

When has applicant for license under Gun Control Act of 1968 "willfully" violated statute or regulations within meaning of 18 USC § 923(d)(1)(C), 59 ALR Fed 254.

What constitutes actual or constructive possession of unregistered or otherwise prohibited firearm in violation of 26 USC § 5861, 133 ALR Fed 347.

94 C.J.S. Weapons § 3 to 8.

---

## §§ 6-8-201 and 6-8-202.

Repealed by Laws 1997, ch. 21, § 2.

**Editor's notes.** — These sections, which derived from Laws 1982, ch. 75, § 3, related to the information required to be kept in a firearms register.

## § 6-8-203. Firearms information to be kept in place of business; inspection by peace officer.

The information required by federal law to be maintained on firearms shall be kept by every wholesaler, retailer, pawnbroker and dealer in firearms in the place of business of the wholesaler, retailer, pawnbroker or dealer, and shall be subject to inspection by any peace officer at all reasonable times. (Laws 1982, ch. 75, § 3; 1997, ch. 21, § 1.)

**Law reviews.** — For article, "Goodbye 3-Card Monte: The Wyoming Criminal Code of 1982" (part two), see XIX Land & Water L. Rev. 509 (1984).

**Am. Jur. 2d, ALR and C.J.S. references.** —